## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| MILLENNIUM LAB HOLDINGS II, LLC, *et al.*, | : | Bankruptcy Case No. 15-12284 (LSS) |
|  | : |  |
| Debtors.[1] | : | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| Opt-Out Lenders, | : |  |
|  | : |  |
| Appellants, | : | Appeal from the Bankruptcy Court |
|  | : |  |
| v. | : | Civil Action No. 17-1461 (LPS) |
|  | : |  |
| Millennium Lab Holdings II, LLC, *et al.*, | : | BAP No. 17-39 |
| TA Millennium, Inc., and James Slattery, | : |  |
|  | : |  |
| Appellees. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## APPELLANTS' BRIEF IN OPPOSITION TO REORGANIZED DEBTORS' MOTION TO DISMISS APPEAL

---

**LOWENSTEIN SANDLER LLP**
Sheila Sadighi, Esq.
Thomas E. Redburn, Jr., Esq.
Michael S. Etkin, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Tel: 973-597-2500
Fax: 973-597-2400
ssadighi@lowenstein.com
tredburn@lowenstein.com
metkin@lowenstein.com

**WHITEFORD, TAYLOR & PRESTON LLC**
Christopher M. Samis, Esq.
 (Del. Bar No. 4909)
L. Katherine Good, Esq.
 (Del. Bar No. 5101)
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801
Tel: 302-353-4144
Fax: 302-661-7950
csamis@wtplaw.com
kgood@wtplaw.com

March 28, 2018

---

[1] The pre-confirmation and pre-effective date Debtors and the last four digits of their respective taxpayer identification numbers were as follows: Millennium Lab Holdings II, LLC (5299); Millennium Health, LLC (5558); and RxAnte, LLC (0219). The Debtors' address is 16981 Via Tazon, San Diego, California, 92127.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................2

A.      The Basis for, and Relief Sought in, the Appeal.................................................................2

B.      The Court Partially Rejects Millennium's Equitable Mootness Argument ........................2

C.      The Plan Contemplates the Specific and Tailored Relief Voya Seeks...............................4

ARGUMENT ................................................................................................................................7

       I.      THE APPEAL IS NOT EQUITABLY MOOT .....................................................7

                A.      Equitable Mootness Cannot Prevent Review of the *Stern* Issue.................8

                B.      The Relief Sought Will Not "Fatally Scramble" the Plan ........................12

                C.      The Relief Sought Will Not Harm Third Parties .....................................17

                D.      Public Policy Supports Deciding the Appeal on Its Merits ......................19

CONCLUSION.............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*,
　369 F.3d 732 (3d Cir. 2004) ............................................................................11

*In re Allied Nevada Gold Corp.*,
　2018 WL 1474932 (3d Cir. Mar. 27, 2018).....................................................17

*Behrmann v. Nat'l Heritage Found.*,
　663 F.3d 704 (4th Cir. 2011) ...........................................................................15

*Bender v. Williamsport Area Sch. Dist.*,
　475 U.S. 534 (1986) ................................................................................... 10, 11

*In re Blast Energy Servs., Inc.*,
　593 F.3d 418 (5th Cir. 2010) ..............................................................................8

*Church of Scientology v. United States*,
　506 U.S. 9 (1992) ..............................................................................................20

*Colo. River Water Conservation Dist. v. United States*,
　424 U.S. 800 (1976) ............................................................................................7

*In re Continental Airlines*,
　91 F.3d 55 (3d Cir. 1996) .................................................................................20

*In re Crystal Oil Co.*,
　854 F.2d 79 (5th Cir. 1988) .............................................................................17

*In re Delta Air Lines, Inc.*,
　374 B.R. 516 (S.D.N.Y. 2007)..........................................................................17

*Fleck v. KDI Sylvan Pools, Inc.*,
　981 F.2d 107 (3d Cir. 1992) .............................................................................11

*Gillman v. Continental Airlines (In re Continental Airlines)*,
　203 F.3d 203 (3d Cir. 2000) ....................................................................... 15, 20

*Hilal v. Williams (In re Hilal)*,
　534 F.3d 498 (5th Cir. 2008) ...........................................................................15

*In re Linear Electric Company, Inc.*,
　852 F.3d 313 (3d Cir. 2017) ..............................................................................9

*Mac Panel Co. v. Virginia Panel Corp.*,
    283 F.3d 622 (4th Cir. 2002) ...................................................................... 17, 20

*Magnet Media, Inc. v. Jubber (In re Paige)*,
    584 F.3d 1327 (10th Cir. 2009)................................................................... 13, 19

*Meritage Homes of Nevada, Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*,
    478 B.R. 403 (D. Nev. 2012) .............................................................................15

*In re Metromedia Fiber Network, Inc.*,
    416 F.3d 136 (2d Cir. 2005) ...............................................................................17

*Nordhoff Investments, Inc. v. Zenith Elecs. Corp.*,
    258 F.3d 180 (3d Cir. 2001) .................................................................. 17, 18, 20

*In re One2One Commc'ns, LLC*,
    805 F.3d 428 (3d Cir. 2015) ................................................................................3

*Opt-Out Lenders v. Millennium Lab Hldgs. II, LLC (In re Millennium Lab Hldgs. II, LLC)*,
    242 F. Supp. 3d 322 (D. Del. 2017) ............................................................passim

*In re Pacific Lumber Co.*,
    584 F.3d 229 (5th Cir. 2009) ....................................................................... 18, 19

*In re Philadelphia Newspapers, LLC*,
    690 F.3d 161 (3d Cir. 2012) ........................................................................ 18, 20

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ........................................................................ 15, 21

*In re Semcrude, L.P.*,
    728 F.3d 314 (3d Cir. 2013) .......................................................................passim

*In re Specialty Equip. Cos., Inc.*,
    3 F.3d 1043 (7th Cir. 1993) ...............................................................................15

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..............................................................................................10

*Stern v. Marshall*,
    564 U.S. 462 (2011) .....................................................................................passim

*In re Texaco, Inc.*,
    92 B.R. 38 (S.D.N.Y. 1988)................................................................................17

*In re Transwest Resort Props., Inc.*,
    801 F.3d 1161 (9th Cir. 2015) ......................................................................... 18, 19

*In re Tribune Media Co.*,
    799 F.3d 272 (3d Cir. 2015) ...........................................................................passim

*In re United Artists Theatre Co.*,
    315 F.3d 217 (3d Cir. 2003) ................................................................................15

*In re Zenith Electronics Corp.*,
    329 F.3d 338 (3d Cir. 2003) ........................................................................... 20, 21

**RULES**

Rule 5003 of the Federal Rules of Bankruptcy Procedure ............................................6

Rule 9021 of the Federal Rules of Bankruptcy Procedure ............................................6

Appellants[2] respectfully submit this Memorandum of Law in opposition to the motion (2017 D.I. 23[3]) by the Reorganized Debtors (or "Millennium") and joined by the other movants (referred to collectively with Millennium as the "Movants"), to dismiss Voya's appeal from the Bankruptcy Court's order on remand.  The Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

The Movants have not met their heavy burden of demonstrating this appeal is equitably moot.  This Court already ruled, in its Corrected Memorandum Opinion issued on March 20, 2017 (the "Memorandum Opinion"), that it must determine whether the Bankruptcy Court acted within the scope of its Article III constitutional authority before addressing equitable mootness – a ruling which the Reorganized Debtors invited and to which they waived any challenge.  There is no basis for a different outcome now.  Moreover, the relief sought by Appellants on this appeal would neither fatally scramble the Debtors' Plan of Reorganization, nor harm any third parties who have justifiably relied thereon.  Indeed, the relief sought consists solely of excising from the Plan the unlawful non-consensual releases of and injunction against Voya's (and only Voya's) RICO and state law claims against other non-debtor third parties – surgical relief approved by this Court in its Memorandum Opinion in the event the Bankruptcy Court on remand found it lacked constitutional adjudicatory authority to enter the non-consensual releases.  As a result, no chaos will ensue from granting Appellants the relief they seek.  No matter the outcome of this appeal, the Plan, as well as the myriad transactions executed under its auspices, will remain in

---

[2] The Appellant entities, referred to herein collectively as "Appellants," "Non-Consenting Lenders" or "Voya," are identified in Exhibit A hereto.
[3] References herein to documents in the instant appeal, Case No. 17-1461 will be cited as "2017 D.I.__", those in the District Court Case, Case No. 16-110 (LPS), will be cited as "2016 D.I.__", those in the Bankruptcy Case, Case No. 15-12284 (LSS), will be cited as "Bankr. D.I.__"  Citations to pages of Appellants' Appendix at 2017 D.I. 30 are referenced as "A__."  "Mov. Br." refers to the Memorandum of Law in Support of Reorganized Debtors' Motion to Dismiss Appeal, filed on January 26, 2018.  (2017 D.I. 24.)

place.  Accordingly, under the well-established law of this Circuit, the appeal is not equitably

moot, and the Court should deny the motion to dismiss.

**FACTUAL AND PROCEDURAL BACKGROUND**[4]

**A.    The Basis for, and Relief Sought in, the Appeal**

In both their 2016 Appeal and the appeal currently before the Court, Appellants contend

that the Bankruptcy Court erred by ordering the non-consensual release of Appellants' federal

statutory and state common law claims against certain non-debtor tortfeasors as part of the

Debtors' confirmed Plan.   The Bankruptcy Court lacked authority under Article III of the

Constitution (as interpreted by the Supreme Court in *Stern*[5]), as well as under the Bankruptcy

Code and applicable jurisdictional statutes, to order the compulsory releases and permanent

injunction.  (2016 D.I. 13 at 19-37; 2017 Op. App. Br. at 3, 10-42.)  There also was no basis for

doing so under applicable substantive bankruptcy law. (2016 D.I. 13 at 37-50.)  To correct these

errors, Appellants seek an appellate mandate modifying the Confirmation Order by striking the

non-consensual releases and injunction from the Plan *as applied to the Non-Consenting Lender*

*Appellants' claims only*.  (*See* 2017 Op. App. Br. at 55) (Conclusion asking the Court to "reverse

the Bankruptcy Court's decision and strike the Third-Party Release and Permanent Injunction *as*

*to Appellants* from the Confirmation Order.") (emphasis added).   Appellants do not seek any

other changes to the Plan on appeal.

**B.    The Court Partially Rejects Millennium's Equitable Mootness Argument**

Relying on many of the same arguments they press now, Millennium moved to dismiss

---

[4] Appellants incorporate by reference the "Factual and Procedural Background" of their "Brief in
Opposition to Motions of Reorganized Debtors, James Slattery, TA Millennium, Inc. and TA Associates
Management L.P. to Dismiss Appeal,"  Case No. 1:16-cv-00110-LPS (2016 D.I. 28) (pp. 2-8), and the
"Statement of the Case" of the "Corrected Opt-Out Lenders' Opening Brief on Appeal," Civil Action No.
17-1461 (LPS) (2017 D.I. 31) ("2017 Op. App. Br.") (pp. 4-8), including terms defined therein. We
highlight herein the aspects of that history that are of salience to the equitable mootness issue.
[5] *See Stern v. Marshall*, 564 U.S. 462, 503 (2011).

-2-

the 2016 Appeal as both constitutionally and equitably moot.  (2016 D.I. 6.)  Voya opposed, arguing that the requirements for neither equitable nor constitutional mootness had been met and that, in any event, the Court was obligated to determine whether the Bankruptcy Court acted within the scope of its Article III authority under *Stern* **before** addressing whether to dismiss the appeal under the judge-made equitable mootness doctrine.  (2016 D.I. 28 at 16-19.)

During oral argument before this Court on the 2016 motion to dismiss, Millennium **invited** the Court to consider the *Stern* issue before ruling on equitable mootness.  Specifically, counsel for the Reorganized Debtors represented to the Court that "[w]e have no objection to Your Honor dismissing this case as equitably moot except for dealing with the so-called *Stern v. Marshall* issue here . . . So we have no problem with Your Honor deciding that limited issue, if you feel you need to . . . ."  (A5185-86 (2016 D.I. 44).)  Voya's counsel noted the concession, remarking that "I will say the thing I was very happy to hear Mr. Clark say was that he has no problem with this Court addressing the *Stern* issue, that he is fine with that notwithstanding their motion to dismiss the appeal."  (A5194 (2016 D.I. 44).)

In its Memorandum Opinion, this Court agreed with Voya and squarely held that "it cannot consider the Debtors' motion to dismiss the appeal on equitable mootness grounds without first determining whether a constitutional defect in the Bankruptcy Court's decision deprived that court of the power to issue that decision."  *Opt-Out Lenders v. Millennium Lab Hldgs. II, LLC (In re Millennium Lab Hldgs. II, LLC)*, 242 F. Supp. 3d 322, 337-38 (D. Del. 2017).  In reaching this holding, the Court rejected the Reorganized Debtors' reliance on two Third Circuit decisions – *In re One2One Commc'ns, LLC*, 805 F.3d 428 (3d Cir. 2015), and *In re Tribune Media Co.*, 799 F.3d 272 (3d Cir. 2015) – for the proposition that *Stern* does not impact equitable mootness dismissals; the Court distinguished both cases on the grounds that neither

-3-

"involved a claim that the Bankruptcy Court had acted in violation of Article III or *Stern*." *Opt-Out Lenders*, 242 F. Supp. 3d at 337. The Court also expressly noted (and relied upon) the Reorganized Debtors' statement at oral argument that they had no objection to consideration of the *Stern* issue before equitable mootness. *Id.* at 338 n.26.

After considering the parties' arguments on the *Stern* issue, the Court remanded the case to the Bankruptcy Court to consider whether, or clarify its ruling that, it had constitutional adjudicatory authority to approve the nonconsensual release of Appellants' claims against the Non-Debtor Equity Holders – and, if not, to strike the releases from the Plan as to Voya (the relief Voya in fact seeks) – and denied without prejudice the Reorganized Debtors' motion to dismiss the appeal on equitable mootness grounds. *Id.* at 339-40.[6] Following the Bankruptcy Court's decision on remand that it had constitutional adjudicatory authority to approve the nonconsensual third-party releases under *Stern* (A5744-45; A5755-95), Voya appealed again, and the Reorganized Debtors filed another motion to dismiss the appeal on mootness grounds.

## C.     The Plan Contemplates the Specific and Tailored Relief Voya Seeks

The premise of Debtors' renewed motion to dismiss (as was the case with their first motion) is that, if Appellants win their appeal, the result will be a reversal of the Confirmation Order in its entirety, leading to the total unwinding of the Plan and a chaotic parade of horribles. (*E.g.*, Mov. Br. at 12-18.) However, there is no basis in the Plan for a "re-do" if Voya prevails on Appeal, nor is Voya asking for the Plan to be unwound – only that the Court strike the unlawful releases and injunction as they apply to Appellants' claims, as the Court expressly contemplated in its Memorandum Order. Furthermore, the Plan itself addresses the eventuality

---

[6] Contrary to the assertion in the Reorganized Debtors' moving brief (2017 D.I. 24 at 4), the Court's Amended Opinion in the 2016 Appeal did not hold "that the bankruptcy court had subject matter jurisdiction to grant the releases under the Plan." Quite the contrary: all this Court held was that even if the Bankruptcy Court were correct that it had subject matter jurisdiction to approve the releases it still needed authority under Article III. *Opt-Out Lenders*, 242 F. Supp. 3d at 338.

of the nonconsensual third-party releases being stricken as to Voya.   Specifically, the Plan provides that, to the extent the Released Parties do not "obtain a full and complete release" from "the Non-Consenting Lenders," *i.e.*, Voya, then:

> MLH and TA (and their Related Parties) may seek any available insurance, including any available Millennium insurance and any insurance separately available to MLH and TA individually, for such defense costs incurred . . . . If the foregoing ... insurance coverage has been exhausted or is not otherwise available for defense costs, in such event New Holdco (and its subsidiaries) shall reimburse MLH and TA (or their Related Parties) for reasonable and documented attorney's fees and expenses (but not losses or liabilities), **in connection with, relating to, arising out of, following or on account of the litigation of any claims by the . . . Non-Consenting Lenders, in which MLH or TA (or their Related Parties) is named as a party or is the subject of discovery** . . . solely to the extent that, all reimbursed costs, including those costs set forth in the preceding paragraph, shall not exceed an aggregate maximum of $3 million....

(A1722-23 (Plan Art. X.M.) (emphasis added).)   In other words, if the Released Parties – including Appellees – received something less than the full releases set forth in the Plan after all judicial proceedings have been completed, then they are entitled to access insurance coverage and/or indemnification up to $3 million for defense costs from the Reorganized Debtors.  That is the specifically contemplated remedy if the Court finds (correctly) that the Bankruptcy Court cannot compel non-debtors, without their consent, to release their direct, state law claims against other non-debtors under the Plan.

Moreover, nothing in the Plan gives the Non-Debtor Equity Holders the right to demand the return of their $325 million contribution following Plan consummation merely because the non-consensual releases and injunction as to Voya's claims are struck on appeal.   To the contrary, in addition to the indemnification right described above, the protection the Plan gave to the Non-Debtor Equity Holders against the risk that the Plan could be modified on appeal was the right to insist that all appeals from the Confirmation Order be exhausted *before* the Plan could be consummated.   (A1707 (Plan Art. VIII.B.(iv)).)   The Non-Debtor Equity Holders

deliberately *waived* that right, with full knowledge that Voya's appeal was pending and that the nonconsensual releases of Voya's claims against non-debtors could be stricken from the Plan.[7] Movants have made no showing whatsoever (because they cannot) that, particularly following their tactical waiver, the Non-Debtor Equity Holders have any legal right to try to rescind their $325 million contribution if the nonconsensual releases of Appellants' third-party claims are struck from the Plan – and, as discussed below, it is Movants' burden to do so.

The Plan's Severability Clause further confirms that the parties never contemplated a "re-do" of the Plan if the releases were overturned on appeal.  (A72 (Plan Art. XI.E.).)  That clause only addresses the judicial declaration of the invalidity of Plan provisions "prior to the Confirmation Date" – meaning prior to entry of the Confirmation Order by the Bankruptcy Court.  (*Id.*; *see also* A9 (Plan Art. I.B.1.27.).)  It expressly provides that, prior to the Confirmation Date, to the extent the Debtors attempt to modify the Plan in response to a judicial finding that one of its provisions is legally unenforceable, such modification could not "modify the conditions to the Effective Date set forth in Article VIII.B or compel the funding of the Settlement Contribution if the conditions to such funding set forth in the [Restructuring Support Agreement] have not been satisfied."  (A72 (Plan Art. XI.E.).)  It does not at all address what is supposed to happen if a provision of the Plan – such as the third-party releases – is declared invalid on appeal after the Confirmation Order has been entered.  Even assuming that this clause would have given the Released Parties the right to withhold making their Settlement Contribution if the releases were stricken from the Plan as to Voya by the Bankruptcy Court

---

[7] Specifically, because the Confirmation Order as entered was not yet final and *non-appealable*, the Plan could not be consummated unless the Non-Debtor Equity Holders waived the non-appealability condition to effectiveness.  (A1707 (Plan Art. VIII.B.(iv)); A13 (Plan Art. I.B.1.68 (definition of "Final Order")); A22 (Plan Art. I.B.1.157 (definition of "Settling Members")).)  Despite being fully aware of the risk that a higher Court could strike from the Plan the nonconsensual releases of Appellants' claims, the Non-Debtor Equity Holders gave that waiver and made their payment contribution, thereby enabling the Debtors to consummate the Plan despite Appellants' pending appeal.

***before confirmation***, it does not accord them that right if the Plan is confirmed but the releases are invalidated on appeal. Instead, the Plan gave the Released Parties the two post-confirmation remedies discussed above – namely, the right to refuse to allow the Plan to become effective until all appeals from the Confirmation Order had been resolved (which the Non-Debtor Equity Holders waived), and the right to access insurance and obtain indemnification from the Company if the releases are struck on appeal after they allowed the Plan to become effective.

## ARGUMENT

## I.     THE APPEAL IS NOT EQUITABLY MOOT

"Following confirmation of a reorganization plan by a bankruptcy court, an aggrieved party has the statutory right to appeal the court's rulings." *In re Semcrude, L.P.*, 728 F.3d 314, 320 (3d Cir. 2013). "Once there is an appeal, there is a 'virtually unflagging obligation' of federal courts to exercise the jurisdiction conferred on them." *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

In seeking dismissal, Movants nevertheless contend that Appellants' properly-noticed appeal is equitably moot. They are wrong. Equitable mootness is "a judge-made abstention doctrine that allows a court to avoid hearing the merits of a bankruptcy appeal because implementing the requested relief would cause havoc." *Semcrude*, 728 F.3d at 317. Because refusing to entertain the merits of an appeal "should be the rare exception and not the rule," *id*. at 321, "[t]he party seeking to invoke the doctrine bears the burden of overcoming the strong presumption that appeals from confirmation orders of reorganization plans – even those not only approved by confirmation but implemented thereafter . . . – need to be decided." *In re Tribune Media Co.*, 799 F.3d 272, 277-78 (3d. Cir. 2015). In addition, courts apply the equitable mootness doctrine "'with a scalpel rather than an axe. To that end, a court may fashion whatever relief is practicable instead of declining review simply because full relief is not available.'" *Id.*

at 278 (quoting *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 425 (5th Cir. 2010)); *see also Semcrude*, 728 F.3d at 324-25 ("the feared consequences of a successful appeal are often more appropriately dealt with by fashioning limited relief at the remedial stage than by refusing to hear the merits of an appeal at its outset").

In determining whether the appeal is equitably moot, the Court must consider "(1) whether a confirmed plan has been substantially consummated; *and* (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *Tribune*, 799 F.3d at 278 (emphasis added). Substantial consummation of the plan is not enough by itself to warrant a finding of equitable mootness. In cases – as here – "where relief would *neither* fatally scramble the plan *nor* significantly harm the interests of third parties who have justifiably relied on plan confirmation, there is no reason to dismiss as equitably moot an appeal of a confirmation order for a plan now substantially consummated." *Id.* (emphasis in original). Furthermore, Movants cannot merely speculate as to potential harms, but must demonstrate that "granting relief on appeal [would] be *almost certain* to produce a 'perverse' outcome – 'chaos in the bankruptcy court' from a plan in tatters and/or significant 'injury to third parties.'" *Semcrude*, 728 F.3d at 320 (emphasis added); *Opt-Out Lenders*, 242 F. Supp. 3d at 337 (same). Movants have not met – and cannot meet – their burden here.

### A.  Equitable Mootness Cannot Prevent Review of the *Stern* Issue

Movants attempt to re-argue the Court's prior ruling that "it cannot consider the Debtors' motion to dismiss the appeal on equitable mootness grounds without first determining whether a constitutional defect in the Bankruptcy Court's decision deprived that Court of the power to issue that decision." *Opt-Out Lenders*, 242 F. Supp. 3d at 337-38. (Mov. Br. at 10-11.) That attempt fails. As a preliminary matter, Movants mischaracterize the Court's holding by asserting that the

Court only reserved on equitable mootness until the **Bankruptcy Court** decided the *Stern* issue. (*Id.*) To the contrary, the language of the Court's Memorandum Opinion makes crystal clear that "it" could not rule on equitable mootness "without first determining" whether the Bankruptcy Court acted within the scope of its constitutional adjudicatory authority. *Opt-Out Lenders*, 242 F. Supp. 3d at 337-38. That determination has not yet been made. Following the remand to the Bankruptcy Court, the *Stern* issue is now ripe for this Court's review – before any consideration of equitable mootness.

The Reorganized Debtors' contention that the Court's holding was wrong because *Stern* does not affect the Court's subject matter jurisdiction fares no better. (Mov. Br. at 11.) Leaving aside the obvious retort that the Third Circuit disagrees, *see In re Linear Electric Company, Inc.*, 852 F.3d 313, 320 n.32 (3d Cir. 2017) (holding that *Stern* issue "implicates the jurisdiction of the Bankruptcy Court and therefore our appellate jurisdiction"), the point is simply irrelevant. Just as in *Stern*, by entering a final order that conclusively disposed of (by releasing without their consent) Appellants' RICO and state law claims against non-debtor third parties, the Bankruptcy Court improperly exercised the "judicial power of the United States" in violation of Article III, and thus had no constitutional power to order the nonconsensual releases at issue. Because this argument implicates the Bankruptcy Court's constitutional power to act, under well-established Supreme Court precedent, this Court is obligated to first decide whether the Bankruptcy Court had such power before considering whether the appeal should be dismissed under the judge-made equitable mootness doctrine.

In the analogous context of Article III standing – a component of Article III's "case" or "controversy" requirement and prerequisite to the constitutional exercise of the "judicial power of the United States" – the Supreme Court has twice held that an appellate court, before it

decides any other issue presented by the appeal, must first verify that the plaintiff had Article III standing sufficient to confer on the lower court power to hear the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-104 (1998); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986). The Supreme Court grounded this requirement in the "inflexible" rule, itself a product of separation of powers concerns and Article III's limitations on federal court power, that "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review[.]'" *Bender*, 475 U.S. at 541 (quotation omitted); *see also Steel Co.*, 523 U.S. at 94 (same) (quotation omitted). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Id.* at 94-95 (quotation omitted). In other words, this threshold jurisdictional inquiry is necessary because a federal court must initially determine in every case whether it, ***and any lower court whose decision it is reviewing***, "is authorized" to act pursuant to the Constitution and federal statutes. *See Bender*, 475 U.S. at 541; *see also Steel Co.*, 523 U.S. at 101 (same) (citation omitted). That means the question of whether a lower court had the constitutional power to issue the decision it did is incorporated in an appellate court's "special obligation" to determine whether the lower court had "jurisdiction" over the "cause under review." *See id.* at 95. That the constitutional defect may technically not be jurisdictional does not matter if it goes to the very power of the lower court to act consistent with Article III and separation of powers principles.

As this Court recognized in its Memorandum Opinion, under the rule of *Bender* and *Steel Company*, the judge-made doctrine of equitable mootness cannot obviate this Court's independent obligation to decide whether the Bankruptcy Court had the constitutional authority to order the releases at issue. If a constitutional defect in the Bankruptcy Court's decision exists

that deprived it of the power to issue that decision, this Court must correct that error before considering any other issue presented on appeal – including the question of whether an appeal is equitably moot. *See Bender*, 475 U.S. at 541. Accordingly, even if equitable mootness applied to this appeal (and it does not), the Court must still decide Appellants' *Stern* argument.[8]

Moreover, the Reorganized Debtors cannot now attack the Court's holding that it must decide the *Stern* issue before turning to equitable mootness, because they waived that issue, including by inviting the Court's ruling which they now complain was error. *See Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 116 (3d Cir. 1992) ("When a litigant takes an unequivocal position at trial, he cannot on appeal assume a contrary position simply because the decision in retrospect was a tactical mistake, or perhaps a candid but regretted concession."); *2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, 369 F.3d 732, 744 (3d Cir. 2004) (holding that party waived challenge to jury instruction on appeal when it submitted an instruction to the trial court that contained the standard to which it now objected).

Here, the Reorganized Debtors expressly confirmed during oral argument on the 2016 Appeal that they had "no objection" to the Court's ruling on the *Stern* issue before addressing equitable mootness. (A5185-86 (2016 D.I. 44).) The Court expressly noted that concession in its Memorandum Opinion and relied on it. *Opt-Out Lenders*, 242 F. Supp. 3d at 338 n.26. By making this concession and consenting to the Court's embarking on exactly the course of action they now claim was erroneous, the Reorganized Debtors invited any purported error (which it was not), waived any challenge they may have had to the Court's decision to decide *Stern* first,

---

[8] Although not identified as such, the quotation from *Tribune* on page 11 of the Reorganized Debtors' brief is actually from Judge Ambro's concurring opinion, not the opinion for the Court, and addresses a general argument that *Stern* invalidates the equitable mootness doctrine entirely. *See* 799 F.3d at 285-86 (Ambro, J., joined by Vanaskie, J., concurring). The opinion does not address a situation like the one here, where equitable mootness is being invoked to prevent review of a challenge to the bankruptcy court's actions as outside the scope of its constitutional authority under Article III and *Stern*. Indeed, this Court previously distinguished *Tribune* on this exact ground. *Opt-Out Lenders*, 242 F. Supp. 3d at 337.

and cannot now be heard to complain merely because they now believe they are disadvantaged by that procedure.  The Reorganized Debtors provide no justification for why, now that the Bankruptcy Court has completed the remand proceedings and the matter has been returned to this Court, the Court should reverse course on the basis of the same arguments they strategically chose not to press during the 2016 appeal.

> **B.**      **The Relief Sought Will Not "Fatally Scramble" the Plan**

In determining whether the relief sought by an appellant will fatally scramble a plan, a court "should look to whether granting relief will require undoing the plan as opposed to modifying it in a manner that does not cause its collapse." *Semcrude*, 728 F.3d at 321.  Because the relief Appellants seek on appeal can be granted without requiring the Plan be rescinded or causing it to collapse, the appeal is not equitably moot.

Appellants seek limited relief that consists of modifying the Plan by striking the Third-Party Release and Permanent Injunction, ***solely as to those provisions that apply to Appellants***, holders of less than 6% of the released claims.  Appellants do not challenge any other aspect of the Plan.  Granting them the requested modification will not cause the Plan to collapse.  Far from it.  Other than the non-debtor tortfeasors, no interested party will even be affected by granting Appellants the relief they seek.  The Reorganized Debtors' settlement with the DOJ, the Debtors' licenses, the replacement of the Credit Facility with the new term loan, *etc.*, will all remain undisturbed.  And so will the other Plan releases, as the other Lenders consented to them by voting in favor of the Plan and failing to appeal from the Confirmation Order.  *See Semcrude*, 728 F.3d at 323-24.

Although they claim Voya's requested relief would require dismantling the entire Plan (Mov. Br. at 16), Movants cite nothing in the Plan itself that would authorize the Non-Debtor Equity Holders to demand the return of their entire $325 million contribution merely because the

Court disallows the unlawful nonconsensual release of Appellants' claims against them.  To the contrary, the Plan contemplates just such a scenario and gives the non-debtor tortfeasors a quite different remedy:  the ability to access insurance coverage and/or certain indemnification from Debtors for defense costs.  (A1722).  Moreover, the Plan gave the Non-Debtor Equity Holders the right to insist that Plan consummation be delayed until all appeals from the Plan Confirmation Order were exhausted.  (A1707).  They waived that right, accelerated confirmation of the Plan and assumed the risk of an adverse ruling.  They cannot be heard to complain after the appeal does not go their way.  *See Magnet Media, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1343 (10th Cir. 2009) ("[W]here, as here, the parties attempting to convince the court not to reach the merits have accelerated the consummation of the plan despite their knowledge of a pending appeal – in this case, by waiving the requirement that the consummation await the resolution of all pending appeals – we are less inclined to grant their wish that the court abstain from reaching the merits on appeal.").

With respect to the insurance and indemnification remedy, the Reorganized Debtors respond that "the notion that the Equity Holders were willing to part with $325 million in exchange for a $3 million insurance policy is both absurd and baseless." (Mov. Br. at 13.)  That argument is a strawman, absurd and baseless.  The Non-Debtor Equity Holders were willing to part with $325 million, to fund a settlement with the DOJ for claims against the Company arising under their control, because the Company and the vast majority of Lenders agreed to release their claims, including for fraudulent conveyance/clawback of the $1.3 billion "special dividend" the Non-Debtor Equity Holders granted themselves while denying the existence of any investigations that reasonably could be expected to adversely impact the Company.  Indeed, prior to the bankruptcy, the Non-Debtor Equity Holders were willing to make the same $325 million

contribution in the context of an out-of-court restructuring, even if they did not receive releases from non-consenting Lenders holding up to $50 million (subject to increase) of aggregate principal term loan balance under the Credit Facility.   (A95 (Discl. S.).)   Given the other significant benefits the Non-Debtor Equity Holders received, it is not surprising that they were willing: (i) to agree to a Plan with specific indemnification and insurance remedies – but without any provision allowing for a complete unwind – in the event they had to defend the Non-Consenting Lenders' claims; and (ii) to waive their bargained-for condition to consummation and instead fund the Plan without the certainty of full releases from Voya.[9]

The Movants have failed to make any showing, let alone carried their burden of proving, that striking the offending nonconsensual third-party release and injunction as to Voya will require undoing the Plan.   In accordance with the equitable mootness doctrine's narrow scope and rare application, the Third Circuit on no less than three occasions has found bankruptcy appeals not to be equitably moot where, as here, a party merely seeks revival of discrete released claims that would not otherwise upset a confirmed plan.  *See, e.g.*, *Semcrude*, 728 F.3d at 323-24 (reversing district court finding of equitable mootness where appellant sought to revive its own adversary proceeding against estate; concluding that doing so would not disrupt the debtors' larger global settlement of claims with similarly situated claimants); *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000) (finding appeal not equitably moot where "releases (or some of the releases) could be stricken from the plan without undoing other portions of it"); *Gillman v.*

---

[9] Equally unavailing is Movants' mischaracterization of the insurance remedy as ensuring the Non-Debtor Equity Holders "have the necessary funds vigorously to defend the releases in litigation if necessary." (Mov. Br. at 13.)   That assertion cannot be squared with the plain language of Article X.M. of the Plan, which triggers the Non-Debtor Equity Holders' right to access insurance and indemnification when they "do not obtain a full and complete release from the Third Party Releasing Parties [including the Non-Consenting Lenders.]"  (A1722 (Plan Art. X.M.).)   The insurance remedy is thus designed to offset the Non-Debtor Equity Holders' costs from defending a lawsuit brought by Voya after the releases are invalidated, not to defend the releases themselves on appeal.

*Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 210 (3d Cir. 2000) ("*Continental II*") (holding that appeal challenging non-consensual third-party releases in plan of reorganization was not equitably moot because "[n]o evidence or arguments have been presented that Plaintiffs' appeal, if successful, would necessitate the reversal or unraveling of the entire plan or reorganization"); *see also In re United Artists Theatre Co.*, 315 F.3d 217, 228 (3d Cir. 2003) (appeal challenging indemnification provision for an estate professional was not equitably moot because, even if appeal were successful, the plan would survive intact).[10]  The Reorganized Debtors' attempt to distinguish these decisions is unavailing, as there is no evidence that striking the release of Voya's claims – a remedy already approved in the Court's Memorandum Opinion – is any more likely to result in the Plan being unwound than the releases at issue in those cases. (*See* Mov. Br. at 15-16.)

*Semcrude* is directly on point.  In that case, the debtors reached a global settlement with representatives of their oil and gas producers and sought, by incorporating the settlement into their plan of reorganization, to compel all of the producers to dismiss their adversary proceedings against the debtors and release their claims.  728 F.3d at 319.  The appellants, a group of producers that did not wish to participate in the settlement, appealed the plan confirmation order, arguing that "the reorganization plan could not validly discharge their claims without affording

---

[10] Decisions in other jurisdictions are in accord.  *Hilal v. Williams (In re Hilal)*, 534 F.3d 498, 500-01 (5th Cir. 2008) (holding that appeal challenging only release provision of plan, and not the entire confirmation order, was not equitably moot); *Behrmann v. Nat'l Heritage Found.*, 663 F.3d 704, 713-14 (4th Cir. 2011) (holding that appeal challenging plan's release of claims against debtors' directors and officers was not equitably moot); *Meritage Homes of Nevada, Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*, 478 B.R. 403, 412 (D. Nev. 2012) (holding that appeal challenging third-party release in plan of reorganization not equitably moot "because the Court can provide effective relief by modifying the Confirmation Order").  *Cf. In re Specialty Equip. Cos., Inc.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (cited in Mov. Br. at 14) (noting that challenge to the release of one claimant's claim "would neither change significantly the composition of the plaintiff class in the pending litigation nor have an impact on the acceptance vote" but that appellants challenged release of the claims of the entire bondholder class, which "would have a much more palpable effect on the bargain struck in the reorganization").

them the procedural protections of an adversary proceeding." *Id.* at 320. As the Debtors do here, the debtors in *Semcrude* argued that the appeal was equitably moot because the limited relief sought by the appellants "would necessitate unraveling the entire Plan." *Id.* at 323. The Third Circuit rejected this argument as "unsupported by the evidence."

> ***It is important to understand Appellants' requested relief.*** They do not assert that the central compromise of the Producer Settlement is impermissible. They simply seek a ruling that the plan did not discharge ***their claims***, and ask for the opportunity to assert them in an adversary proceeding. We have no indication – other than Debtors' "Chicken Little" statements – that this would upset the Producer Settlement or that doing so would cause the remainder of the plan to collapse.

*Id.* at 323-24 (emphasis added). Because the discharge of the objecting producers' claims could be excised from the plan of reorganization without undoing the entire global settlement or causing the plan to collapse, the appeal was not equitably moot. *Id.* So too here.

The Reorganized Debtors' heavy reliance on *Tribune* is misplaced. The key difference between *Tribune*, on the one hand, and *Semcrude* and the case at bar, on the other, is that the objector in *Tribune* expressly sought to scuttle ***in its entirety*** the settlement of the debtors' claims that was at the heart of the reorganization plan. 799 F.3d at 277. There was no discrete, purportedly unlawful piece of the settlement that could be eliminated without compromising the entire plan. Because the settlement agreement "was a central issue in the formulation of a plan of reorganization[,]" revoking it ***in its entirety***, as the objector sought to do, would "recall the entire Plan for a redo." *Id.* at 280-81 (internal quotation omitted). Also key to the Court's decision was the fact that the objector could have obtained a stay of plan confirmation had it posted a bond, as ordered by the Bankruptcy Court. Because the objector "effectively chose to risk a finding of equitable mootness and implicitly decided that an appeal with a stay conditioned on any reasonable bond amount was not worth it[,]" a finding of equitable mootness was "not unfair." *Id.* at 282. Neither *Tribune* factor is present here. Moreover, there is nothing

inequitable here about holding the Non-Debtor Equity Holders to their bargain under the Plan

after the Voya releases are stricken because they *inter alia* assumed the risk of that result by

waiving the final, non-appealable order condition to the Plan's effectiveness.[11]

### C.     The Relief Sought Will Not Harm Third Parties

Granting the relief sought in this appeal will not harm any legitimate third party reliance

interests, because, as explained above, the core transactions underlying the Plan will remain

intact no matter the outcome of this appeal.  (*See* Mov. Br. at 18-19.)  The *only* parties affected

by the plan modification sought by Voya are the non-debtor tortfeasors who, in any event, will

look to the Plan for fall-back indemnification rights to defend the Non-Consenting Lenders'

claims.  But their purported reliance on the Plan does not count.

Equitable mootness is "limited in scope and cautiously applied" in this Circuit, in part,

because of the potential for the doctrine's abuse by plan proponents seeking to ram illegal plan

provisions through the confirmation process and then immunize them from appellate review.  *See*

*In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 170 n.12 (3d Cir. 2012) (noting then-Judge

---

[11] The Reorganized Debtors cite a number of non-Third Circuit cases finding appeals equitably moot where an appellant sought to invalidate releases in a reorganization plan.  None of these cases is binding on this Court.  Each case is distinguishable from the instant one, and several of them were decided under the Second Circuit's (contrary to Third Circuit jurisprudence) "strong presumption" that an appeal is moot where the plan has been substantially consummated.  (Mov. Br. at 14-15 and n.16) (citing, *e.g.*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) (appeal presumed moot and burden on appellant); *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622 (4th Cir. 2002) (appellant sought to eliminate *entirety* of injunction against claims); *In re Crystal Oil Co.*, 854 F.2d 79 (5th Cir. 1988) (did not involve releases at all); *In re Delta Air Lines, Inc.*, 374 B.R. 516 (S.D.N.Y. 2007) (appeal presumed moot; appellant sought to *entirely* eliminate comprehensive settlement agreement between numerous parties); *In re Texaco, Inc.*, 92 B.R. 38 (S.D.N.Y. 1988) (appeal presumed moot; appellant sought to rescind release provisions in their *entirety*).  *See also Nordhoff Investments, Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 189 (3d Cir. 2001) (finding appeal equitably moot where, unlike the case at bar, appellant challenged the valuation of the debtor, which was the "very centerpiece of the plan," and admitted at oral argument the entire plan would have to be unraveled).  The Third Circuit's recent decision in *In re Allied Nevada Gold Corp.* is also distinguishable because, unlike Voya, the appellants there "asked the District Court to vacate the confirmation order, unwind completed transactions, and revalue Allied Nevada so as to increase the distribution to stockholders.  In other words, they sought to do the whole thing over, which is not much of an alternative in the face of a substantially consummated plan."  2018 WL 1474932 at *5 (3d Cir. Mar. 27, 2018).

Alito's warning that an expansive equitable mootness doctrine "'can easily be used as a weapon to prevent any appellate review of bankruptcy court orders confirming reorganization plans'") (quoting *Nordhoff*, 258 F.3d at 191 (Alito, J., concurring)); *Semcrude*, 728 F.3d at 326 ("[w]hen equitable mootness is used as a sword rather than a shield," the presumption that "federal courts should hear and decide on the merits cases properly before them . . . is upended"). Consequently, the Third Circuit has held that "reliance on consummation of a plan would not be justified if a third party obtained a benefit that was inconsistent with a contract, statute, or judgment, as any benefit from such an error would result in ill-gotten gains." *Tribune*, 799 F.3d at 278 (internal quotation omitted); *see also id.* at 283 (explaining that "ill-gotten" gains need not be the result of malfeasance, but only that the benefit is "not valid"). This is especially true where the party claiming reliance extensively participated in creating and securing confirmation of the unlawful plan. *See, e.g.*, *In re Pacific Lumber Co.*, 584 F.3d 229, 244 (5th Cir. 2009) ("That there might be adverse consequences to [the plan proponents/funders] is not only a natural result of any ordinary appeal – one side goes away disappointed – but adverse appellate consequences were foreseeable to them as sophisticated investors who opted to press the limits of bankruptcy confirmation and valuation rules."); *see also In re Transwest Resort Props., Inc.*, 801 F.3d 1161, 1170 (9th Cir. 2015) (holding that "when a sophisticated investor … helps craft a reorganization plan that 'press[es] the limits' of the bankruptcy laws, appellate consequences are a foreseeable result") (quoting *Pacific Lumber*, 584 F.3d at 244).

Here, the Non-Debtor Equity Holders crafted a Plan that contains unlawful non-consensual third-party releases between non-debtors. Assuming the appeal is meritorious, as the Court must do for purposes of this motion, *Tribune*, 799 F.3d at 281, the compulsory releases of Appellants' claims against the non-debtor tortfeasors (and accompanying permanent injunctions)

were ordered by the Bankruptcy Court in the absence of constitutional and statutory power to do so, and in violation of substantive bankruptcy law principles. (*See* Op. App. Br. §§ I.A, I.B.) That means the releases and injunction are not "valid." They thus constitute ill-gotten benefits on which the non-debtor tortfeasors cannot justifiably rely. *Tribune*, 799 F.3d at 278, 283.[12]

### D.  Public Policy Supports Deciding the Appeal on Its Merits

Movants' policy arguments for dismissing the appeal are utterly without merit. (Mov. Br. at 19-20.) Concerns about discouraging investor participation in reorganized entities and protecting the "free flow of commerce" are irrelevant here. If the appeal is successful, the Plan, minus the unlawful nonconsensual releases of Appellants' claims, will remain intact. As the Third Circuit has recognized, "[p]reserving the finality of plan confirmation to encourage parties to move forward with plan execution justifies forbearing the exercise of jurisdiction only where precluding the appeal will prevent a perverse outcome." *Semcrude*, 728 F.3d at 326. As a successful appeal here, far from producing a "perverse outcome," will only deprive the Non-Debtor Tortfeasors of releases to which they are not lawfully entitled and could never have obtained without Appellants' consent, the finality interests raised by the Debtors cannot justify this Court's declining to hear the merits. Indeed, to dismiss Voya's appeal here would be tantamount to permitting the Reorganized Debtors to use equitable mootness "as a sword rather than a shield" and undermine the public policy rationale which underlies the equitable mootness doctrine. *Id*. As the Court summed it up in *Continental II*, the "equities here would not dictate

---

[12] In addition, justifiable reliance is precluded because the Non-Debtor Equity Holders knew that Appellants had both objected to the Bankruptcy Court's authority to order non-consensual releases of Appellants' claims and appealed the Bankruptcy Court's decision, yet chose to fund and consummate the Plan anyway. *See Pacific Lumber*, 584 F.3d at 244; *Transwest*, 801 F.3d at 1170. Although the Non-Debtor Equity Holders had the right to delay consummation of the Plan until appellate proceedings had concluded, they consummated the Plan while fully consonant that it could be modified on appeal. *In re Paige*, 584 F.3d at 1343. As a result, they had no justifiable reliance interest on the Plan's compulsory releases of Appellants' claims.

dismissal" because "[Appellants], who have never had their day in court, have been forced to forfeit their claims against non-debtors with no consideration in return." 203 F.3d at 211.[13]

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.[14]

Dated: March 28, 2018

Respectfully Submitted,

**LOWENSTEIN SANDLER LLP**
Sheila A. Sadighi, Esq.

---

[13] Appellants' decision not to appeal the Bankruptcy Court's denial of their stay motion is also irrelevant. (Mov. Br. at 20.) The Third Circuit has repeatedly held that "neither the Bankruptcy Code nor any other statute predicates the ability to appeal a bankruptcy court's ruling on obtaining a stay." *E.g., Semcrude*, 728 F.3d at 322-23 (holding that appeal from confirmation order was not equitably moot even though the appellant never even sought a stay). Indeed, an appellant's failure to obtain a stay is irrelevant where, as here, the relief it seeks does not threaten the plan of reorganization's existence. *Philadelphia Newspapers*, 690 F.3d at 169; *In re Zenith Electronics Corp.*, 329 F.3d 338, 346 n.4 (3d Cir. 2003) ("[T]he 'stay' factor is designed to safeguard the same interests as the 'substantial consummation' factor and should only weigh heavily against the appellant if, by a failure to secure a stay, a reorganization plan was confirmed, the existence of which is later threatened by the appellant's appeal. That is not the situation here."). And the fact is that Appellants *did* seek a stay of the Confirmation Order, which the Bankruptcy Court denied because of the DOJ's credible threat to destroy the Company if the settlement was not consummated by December 31, 2015. Given those circumstances, appealing the Bankruptcy Court's refusal to grant a stay would have been a fruitless exercise. The cases cited by the Reorganized Debtors on the stay issue are inapposite. Unlike Voya, the appellants in *Nordhoff* never sought a stay. *See* 258 F.3d at 184. The Fourth Circuit's opinion in *Mac Panel* determined that granting the relief sought on appeal would unwind the entire plan, which made the appellant's failure to pursue a stay on appeal after the bankruptcy court denied one relevant to the analysis. *See* 283 F.3d at 625-26.

[14] The Reorganized Debtors also suggest in a footnote that Voya's appeal is constitutionally moot. (Mov. Br. at 17 n.20.) This argument is frivolous. "[A]n appeal is moot in the constitutional sense only if events have taken place during the pendency of the appeal that make it 'impossible for the court to grant any effectual relief whatever.'" *Continental*, 91 F.3d at 558 (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (internal quotation omitted)). But, here, the Court remains fully capable of modifying the Plan by striking the unlawful third-party releases and permanent injunction as applied to Appellants' non-bankruptcy claims against the Non-Debtor Tortfeasors. *See Semcrude*, 728 F.3d at 323-24. Accordingly, a live Article III "case or controversy" remains. The Reorganized Debtors' suggestion that "this Court cannot reinstate the status *quo ante* because the third-party releases are inseparable" from the Plan is both factually incorrect and irrelevant. (Mov. Br. at 17 n.20.) Under Supreme Court precedent, even if the Court cannot return the parties to the *status quo ante*, a case is not moot so long as the Court can fashion *some* form of meaningful relief. *Church of Scientology*, 506 U.S. at 12-13 (holding that case was not moot because while "a court may not be able to return the parties to the *status quo ante* … a court can fashion *some* form of meaningful relief in circumstances such as these"). That is the case here, as the offending releases as to Voya can be struck from the Plan. *See In re Zenith*, 329 F.3d at 343; *In re PWS*, 228 F.3d at 236.

Thomas E. Redburn, Jr., Esq.
Michael S. Etkin, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Tel: 973-597-2500 Fax: 973-597-2400
ssadighi@lowenstein.com
tredburn@lowenstein.com
metkin@lowenstein.com
*Counsel to the Opt-Out Lenders*[15]

**WHITEFORD, TAYLOR & PRESTON LLC**

  */s/Christopher M. Samis*
Christopher M. Samis, Esq.
(Del. Bar No. 4909)
L. Katherine Good, Esq.
(Del. Bar No. 5101)
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801
Tel: 302-353-4144 Fax: 302-661-7950
csamis@wtplaw.com
kgood@wtplaw.com
*Delaware Counsel to the Opt-Out Lenders*

---

[15] As to all of the Opt-Out Lenders other than Axis Specialty Limited, which is represented in this matter solely by Whiteford, Taylor & Preston LLC.