| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| MILLENNIUM LAB HOLDINGS II, LLC, *et al.*, | : | Bankr. Case No. 15-12284-LSS |
| | : | (Jointly Administered) |
| Debtors. | : | |
| _____ | : | |
| OPT-OUT LENDERS, | : | |
| | : | |
| Appellants, | : | |
| v. | : | Civ. No. 17-1461-LPS |
| | : | |
| MILLENNIUM LAB HOLDINGS II, LLC, *et al.*, | : | |
| TA MILLENIUM, INC., and JAMES SLATTERY, | : | |
| | : | |
| Appellees. | : | |

---

Sheila A. Sadighi, Esq., Thomas E. Redburn, Jr., Esq., and Michael S. Etkin, Esq., of
LOWENSTEIN SANDLER LLP, Roseland, NJ.

Christopher M. Samis, Esq., and L. Katherine Good, Esq. of WHITEFORD, TAYLOR &
PRESTON LLC, Wilmington, DE.

    *Attorneys for Appellants Opt-Out Lenders.*

Wayne S. Flick, Esq., Amy C. Quartarolo, Esq., and Michael J. Reiss, Esq., of LATHAM &
WATKINS LLP, Los Angeles, CA.

Michael R. Nestor, Esq., John T. Dorsey, Esq., and Ryan M. Bartley, Esq., of YOUNG
CONAWAY STARGATT & TAYLOR, LLP, Wilmington DE.

    *Attorneys for Appellees Debtors.*

John C. O'Quinn, Esq., Jason M. Wilcox, Esq., and Edmund G. LaCour Jr., of KIRKLAND &
ELLIS LLP, Washington, DC.

Joshua A. Sussberg, Esq. and AnnElyse S. Gibbons, Esq., of KIRKLAND & ELLIS LLP, New
York, NY.

Domenic E. Pacitti, Esq., of KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington
DE.

    *Attorneys for Appellee James Slattery.*

Michael H. Goldstein, Esq., William P. Weintraub, Esq., and Gregory W. Fox, Esq., of GOODWIN PROCTER LLP, New York, NY.

Robert M. Braceras, Esq. of GOODWIN PROCTER LLP, Boston, MA.

Derek C. Abbot, Esq., Andrew R. Remming, Esq., Daniel B. Butz, Esq., of MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE.

*Attorneys for Appellees TA Millennium, Inc. and TA Associates Management, L.P.*

---

**OPINION**

September 21, 2018
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.   INTRODUCTION[1]

On December 14, 2015, the Opt-Out Lenders (together "Voya"),[2] appealed the order

(B.D.I. 195)[3] ("Confirmation Order"), entered by the Honorable Laurie Selber Silverstein,

Bankruptcy Judge for the United States Bankruptcy Court for the District of Delaware

("Bankruptcy Court"), confirming the above-captioned debtors' Amended Prepackaged Joint

Plan of Reorganization (B.D.I. 182) (as amended, the "Plan"). *See In re Millennium Lab*

*Holdings, II, LLC,* Civ. No. 16-110-LPS D.I. 1 ("2016 Appeal"). Millennium Lab Holdings II,

LLC, and its affiliated reorganized debtors (collectively, the "Debtors"), joined by certain Equity

Holders,[4] moved to dismiss the 2016 Appeal as moot.[5] On March 20, 2017, the Court issued a

Memorandum Opinion and Order denying the motion to dismiss and remanding to the

---

[1] The Court has considered and found helpful the following secondary sources: Ben H. Logan, *A New Millennium of Article III Analysis: Which Court – a Bankruptcy Court or a District Court – Must Decide Whether to Confirm a Plan that Contains a Nonconsensual Third-Party Release? (Part I),* 37 BANKR. LAW LETTER No. 12 (December 2017) & *(Part II)* 38 BANKR. LAW LETTER No. 1 (January 2018); Ralph Brubaker, *A Case Study in Federal Bankruptcy Jurisdiction: Core Jurisdiction (or Not) to Approve Non-Debtor "Releases" and Permanent Injunctions in Chapter 11,* 38 BANKR. LAW LETTER No. 2 (February 2018); Eamonn O'Hagan, *On a "Related" Point: Rethinking Whether Bankruptcy Courts Can "Order" the Involuntary Release of Non-Debtor, Third-Party Claims,* 23 Am. Bankr. Inst. L. Rev. 531 (2015).

[2] Appellants included within the defined term "Voya" are set forth on Exhibit A to the Opt-Out Lenders' Notice of Appeal. (B.D.I. 478)

[3] The docket of the Chapter 11 cases, *In re Millennium Lab Holdings II, LLC, et al.,* Case No. 15-12284-LSS (Bankr. D. Del.), is cited herein as "B.D.I. __." Citations to pages of Appellants' Appendix (D.I. 30) are referenced as "A___."

[4] The Equity Holders who would fund the Plan are non-debtor Millennium Lab Holdings, Inc. ("MLH"), non-debtor TA Millennium, Inc., TA Associates Management, L.P., James Slattery, and Howard Appel (collectively, the "Equity Holders").

[5] *In re Millennium Lab Holdings, II, LLC,* Civ. No. 16-110-LPS, at D.I. 6.

Bankruptcy Court to consider whether it had the constitutional authority to approve the releases contained in the Plan. *See In re Millennium Lab Holdings, II, LLC*, 242 F. Supp. 3d 322, 337-38, 340 (D. Del. 2017) ("Memorandum Opinion"). On October 3, 2017, Judge Silverstein issued an opinion, *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252 (Bankr. D. Del. 2017) ("Remand Opinion"), which held that the Bankruptcy Court had constitutional authority to approve the releases as part of confirmation of the Plan and further held that Voya had forfeited and waived any challenge to the Bankruptcy Court's constitutional authority.

On October 16, 2017, Voya appealed the Remand Opinion (D.I. 1); as part of its appeal, Voya also seeks to reassert the issues it had raised in its 2016 Appeal. The Debtors have again moved to dismiss the appeal on the basis of equitable mootness (D.I. 23, 24) ("Motion to Dismiss").

The parties have fully briefed the Motion to Dismiss (D.I. 23, 24, 25, 35, 38) and the merits of the appeal of the Remand Opinion (D.I. 31, 32, 42). On July 12, 2018, the Court heard oral argument on both the Motion to Dismiss and the merits. (D.I. 52) The parties subsequently submitted supplemental briefing. (D.I. 48, 49, 50, 51)

For the reasons stated below, the Court (i) affirms the Remand Opinion with respect to the Bankruptcy Court's constitutional authority to approve the Plan releases, (ii) dismisses as equitably moot all other issues raised on appeal by Voya in connection with the Confirmation Order, and (iii) holds, in the alternative, that the Confirmation Order is affirmed.

## II.  BACKGROUND

### A.    Plan Confirmation

The background of the Chapter 11 cases is set forth in detail in the Court's prior Memorandum Opinion.[6] Voya's[7] appeal of the Confirmation Order concerns a matter of some controversy: the approval of nonconsensual third-party releases (i.e., the involuntary extinguishment of a non-debtor, third-party's claim against another non-debtor, third party) as part of a Chapter 11 plan of reorganization.

The day before the plan confirmation hearing, Voya filed a civil action in this Court (the "RICO/fraud action"), which is stayed pending the outcome of this appeal.[8] Voya's complaint asserts RICO and common law fraud claims (collectively, the "RICO/fraud claims") against certain defendants who are "Released Parties"[9] under the Plan.[10] The claims arise out of loans

---

[6] *Millennium,* 242 F. Supp. 3d at 328-36.

[7] Appellants are investment funds and accounts managed by Voya Investment Management Co. LLC and Voya Alternative Asset Management LLC. Appellants were lenders of approximately $106.3 million of aggregate principal amount of senior secured debt issued in April 2014 pursuant to a $1.825 billion senior secured credit facility (the "Credit Facility") which was governed by a credit agreement dated April 16, 2014 (the "Credit Agreement") among, *inter alia,* Debtors Millennium Lab Holdings II, LLC ("Holdings") and Millennium Health, LLC, f/k/a Millennium Laboratories, LLC ("Millennium"), and several other lenders.

[8] *ISL Loan Tr. v. TA Assocs. Mgmt., L.P.,* Civ. No. 15-1138-LPS (D. Del.).

[9] The Released Parties under the Plan are non-debtor Millennium Lab Holdings, Inc. ("MLH"), non-debtor TA Millennium ("TA") (together with MLH, hereinafter referred to as the "Non-Debtor Equity Holders"), James Slattery, and Howard Appel. (Civ. No. 16-110-LPS, D.I. 14 at A15, Art. 1.143 (Plan))

[10] The Plan provided the basis for the continuation of the Debtors' business. Specifically, the Plan provided for a $325 million contribution by the Non-Debtor Equity Holders, consisting of $178.75 million from MLH and $146.25 million from TA. The funds were used as follows: $256 million to fund Millennium's settlement of the DOJ claims (*see Millennium,* 242 F. Supp. 3d at 329-30), $50 million to pay certain lenders in exchange for their early commitment to support Millennium's restructuring, and $19 million for operating capital. (Civ. No. 16-110-LPS

made under the Credit Agreement, Voya's participation in those loans, and Millennium's inability to repay them. (*See e.g.*, A2012)

Voya raised a litany of objections to confirmation of the Plan.[11] In pre-confirmation briefing, it appeared that Voya was challenging the Bankruptcy Court's lack of constitutional authority, albeit in a section asserting the Bankruptcy Court's lack of subject matter jurisdiction.[12] (*See* B.D.I. 122 at 17) In response to this argument, Debtors accused Voya of

---

D.I. 14 at A92, A94, A169-A170) In exchange for the $325 million contribution, the proposed Plan provided the Non-Debtor Equity Holders with full releases and discharges of any and all claims against them and related parties – including any claims brought directly by non-Debtor lenders such as Appellants – and including claims relating to the $1.3 billion special dividend that had been paid to the Non-Debtor Equity Holders while the Debtors were in the midst of the DOJ Investigation. (*See* B.D.I. 195-1, Plan at Art. X at H-K; Civ. No. 16-110-LPS D.I. 14 at A2208) The proposed Plan provided no ability for parties to "opt out" of the third-party releases, meaning the releases would be granted upon confirmation of the Plan regardless of whether a creditor consented. (*See* Plan, Art. X at H-K) The proposed Plan also permanently enjoined Appellants from commencing or prosecuting claims released pursuant to the Plan against MLH, TA, or their Related Parties (as defined in the Plan). (*See id.*)

[11] In addition to various objections regarding the content and adequacy of the Disclosure Statement, Voya argued that the Bankruptcy Court lacked either "arising in" or "related to" subject matter jurisdiction to approve the nonconsensual third-party release contained in the Plan. (*See* B.D.I. 122 at 17-25; B.D.I. 174 at 4-9) Voya further asserted that, even if the Bankruptcy Court had subject matter jurisdiction, the proposed approval of the releases under section 105(a) of the Bankruptcy Code would contravene other sections of the Bankruptcy Code, including section 524(e), so the Bankruptcy Court lacked statutory authority to approve the release provisions. (*See* B.D.I. 122 at 26-28) Voya further argued that the Plan could not be confirmed unless it permitted creditors to opt out of the third-party release (*see id.* at 29-31) – and, even if the Plan were so amended, exceptional circumstances did not exist to justify limiting the liability of a non-debtor to another non-debtor under Third Circuit law. (*See id.* at 31-32) (citing *In re Continental Airlines*, 203 F.3d 203, 213 n. 9 (3d Cir. 2000) ("*Continental II*"))

[12] Voya's brief included the following:

> The jurisdiction of the Bankruptcy Courts is statutorily defined, and is confined to the boundaries of that statutory definition. *Stern v. Marshall*, 131 S. Ct. 2594, 2603 (2011) (noting that Bankruptcy Courts may only "hear and enter final judgments in all core proceedings arising under title 11, or arising in a case under title 11"); *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct.

reading *Stern*[13] too broadly, countering that "*Stern* leaves intact [the Bankruptcy Court's] constitutional authority" to approve the third-party releases. (*See* B.D.I. 131 at 17-19) Debtors argued that courts have rejected *Stern* challenges regarding the Bankruptcy Courts' constitutional authority, including in connection with the consideration and approval of nonconsensual third-party releases in a plan. (*See id.* at 17-18) Debtors argued that confirmation of the Plan is "a unitary omnibus civil proceeding for the reorganization of all obligations of the debtor and disposition of all its assets" unique to bankruptcy and "not an adjudication of the various disputes it touches upon." (*See* B.D.I. 131 at 18) (quoting *In re Charles Street African Methodist Episcopal Church of Boston,* 499 B.R. 66, 99 (Bankr. D. Mass. 2013))

In a bench ruling on December 11, 2015, the Bankruptcy Court overruled Voya's objections to the nonconsensual third-party releases and confirmed the Plan. (*See* B.D.I. 206, 12/11/15 Hr'g. Tr.) Addressing Voya's subject matter jurisdiction arguments, the Bankruptcy Court held that it had, at the very least, "related to" subject matter jurisdiction over the claims based on contractual indemnification and fee advancement obligations that satisfied the *Pacor*[14]

---

1932, 1945 (2015) (observing that "bankruptcy courts possess no free-floating authority to decide claims traditionally heard by Article III courts"); 28 U.S.C. § 157(a). Rather, Bankruptcy Courts may only enter final judgments on non-core matters with the consent of the affected parties. *Wellness,* 135 S. Ct. at 1949. Because the Third-Party Release would impact direct, non-bankruptcy claims held by non-Debtors against other non-Debtors and which would not trigger the Court's jurisdiction, the Court does not have **jurisdiction** to approve the Third-Party Release without the consent of the Third Party Releasing Parties. [Voya] ha[s] not given such consent.

(B.D.I. 122 at 17) (emphasis added)

[13] *Stern v. Marshall,* 131 S. Ct. 2594 (2011).

[14] *Pacor v. Higgins,* 743 F.2d 984 (3d Cir. 1984).

test under Third Circuit law. (*See id.* at 13:1-15:22) The Bankruptcy Court further noted that

"*Stern v. Marshall* does not change the conclusion that this Bankruptcy Court has **jurisdiction**":

> The holding in *Stern* was meant to be a narrow one; one that does
> not, quote, "meaningfully change the division of labor" between
> the Bankruptcy Court and the District Court. To this end, debtors
> cite cases rejecting a *Stern* challenge, regarding the Bankruptcy
> Court's **constitutional authority** to consider approval of third-party
> releases in a plan, including Judge Drain's decision in *MPM
> Silicone[s]*, but not any decisions in this district. These Courts
> may be correct. But because of the necessities of this case, I have
> not had time to address that argument. But I need not do so, given
> my finding that I have related-to jurisdiction. Having decided I
> have jurisdiction, I now turn to whether third-party releases are
> appropriate in this case . . . .

(*See id.* at 15:23-16:13 (emphasis added))[15] Thus, while the Bankruptcy Court's confirmation

ruling included a finding that it had "related-to" subject matter jurisdiction over the claims, its

ruling, if any, on constitutional authority was unclear. The Bankruptcy Court then turned to

whether the third-party release was fair and necessary to the reorganization, applying five factors

articulated in *Master Mortgage*[16] and ultimately returning to the *Continental* hallmarks. (*See id.*

at 17:9-26:14) Having found the releases were fair and necessary to the reorganization, the

Bankruptcy Court entered the Confirmation Order. (B.D.I. 195)

### B.    2016 Appeal of Plan Confirmation Order

On the same day, Voya filed its appeal of the Confirmation Order along with a motion for

stay pending appeal (B.D.I. 204) ("Stay Motion"). The Stay Motion was subsequently denied by

---

[15] The Plan Confirmation Order simply stated that the Bankruptcy Court had jurisdiction under 28 U.S.C. § 1334(a) to approve the injunction, bar order, exculpation, and releases set forth in Article X of the Plan. (*See* Civ. No. 16-110-LPS D.I. 14, Plan Confirmation Order at A2094)

[16] *See* B.D.I. 206, 12/11/15 Hr'g Tr. at 17:9-24:18 (referring to *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994)).

the Bankruptcy Court. (B.D.I. 227, 232)[17] Voya did not seek a stay in this Court or the Third

Circuit, and the Debtors filed a notice of the occurrence of the Plan's effective date on December

18, 2015 (the "Effective Date"). (B.D.I. 229) The Reorganized Debtors filed a motion to

dismiss the appeal as equitably moot (Civ. No. 16-110-LPS D.I. 6, 7, 8), which the parties

briefed along with the merits of the appeal (*id.* at D.I. 13, 24, 31). Following oral argument (*id.*

at D.I. 44), the Court issued the Memorandum Opinion.

The Memorandum Opinion declined to rule on the motion to dismiss the appeal as

equitably moot in light of the constitutional issue raised. *See Millennium*, 242 F. Supp. 3d at

337-38. The Memorandum Opinion remanded the case to the Bankruptcy Court to consider

whether, or clarify its ruling that, it had constitutional authority to approve the non-consensual

release of Voya's claims, and to conduct any further proceedings the Bankruptcy Court might

deem just and necessary. *See id.* at 340.

### C.    Remand Opinion

On remand, Judge Silverstein ordered the parties to submit supplemental briefing on the

constitutional issue and on whether Voya had waived any arguments. *See Millennium*, 575 B.R.

---

[17] In the bench ruling, the Bankruptcy Court stated:

> As I found at confirmation, this is a package deal. The releases
> were necessary to induce the equity holders to make their three-
> hundred-and-twenty-five-million-dollar payment to the debtors,
> and to induce the ad hoc [lender] group's support of the [RSA] and
> the plan. Without the releases, there will be no cash contribution
> available to pay the government settlements, and the lenders,
> including Voya, would not receive the equity of the company,
> valued at in excess of $900 million.

(B.D.I. 232, 12/18/15 Hr'g Tr. at 14:20-15:3)

at 289. Following this supplemental briefing, Judge Silverstein issued the Remand Opinion. It is comprehensive and well-reasoned.

In the Remand Opinion, Judge Silverstein "reject[ed] Voya's expansive reading of *Stern*, which not only applies *Stern* outside of the narrow context in which it was made, but far beyond the holding of any court, and which would, if accepted, dramatically change the division of labor between the bankruptcy and district courts." *Id.* at 255-56. Judge Silverstein began the Remand Opinion with a thorough examination of *Stern's* limited context[18] and narrow holding. The

---

[18] As the Bankruptcy Court explained:

> In *Stern*, Vickie Lynn Marshall filed a chapter 11 bankruptcy case in the Central District of California. Prior to filing her bankruptcy petition, Vickie, who was the third wife of the elderly and very wealthy J. Howard Marshall, filed suit in Texas state probate court ("Texas Litigation") against Pierce Marshall, J. Howard's son, for tortious interference with an *inter vivos* gift. In the Texas Litigation, Vickie asserted that Pierce had fraudulently induced J. Howard to exclude Vickie from J. Howard's living trust (and, later, his will) even though, Vickie asserted, J. Howard meant to give her one-half of his estate.
>
> Pierce initiated an adversary proceeding in Vickie's bankruptcy case seeking both damages for defamation and a declaration that the defamation claim was nondischargeable under 11 U.S.C. § 523(a). Pierce also filed a proof of claim for damages due to defamation. Vickie defended Pierce's defamation claim in the adversary proceeding and filed a counterclaim for tortious interference with the gift she believed J. Howard sought to give her. Vickie's counterclaim appeared to mirror, at least in part, the state law complaint she filed in the Texas Litigation.
>
> The bankruptcy judge entered orders in the adversary proceeding all in Vickie's favor. As to Pierce's defamation claim, the judge granted summary judgment for Vickie, thus denying Pierce any recovery. After a bench trial on Vickie's counterclaim for tortious interference, the bankruptcy judge awarded Vickie over $400 million in compensatory damages and $25 million in punitive damages. In the meantime, the judge in the Texas Litigation presided over a jury trial and entered judgment in favor

Remand Opinion explains that it was in the context of *Stern*'s discussion of *Katchen*,[19]

*Langenkamp*,[20] and *Granfinanciera*[21] – all lawsuits brought by trustees seeking affirmative

recoveries (*id.* at 266) – that the Supreme Court announced a disjunctive test (the "Disjunctive

Test") for whether a bankruptcy judge can enter a final order on a trustee's counterclaim:

> Congress may not bypass Article III simply because a proceeding
> may have some bearing on a bankruptcy case; the question is
> whether the action at issue stems from the bankruptcy itself *or*
> would necessarily be resolved in the claims allowance process.

*Stern,* 131 S. Ct. at 2618 (emphasis added). In *Stern*, Vickie's counterclaim for tortious

interference with an alleged gift failed the Disjunctive Test, as it did not "stem" from the

---

> of Pierce on his defamation claim.

> In post-trial proceedings, Pierce re-asserted an argument
> that Vickie's counterclaim was not a core proceeding and thus the
> bankruptcy judge was limited to submitting proposed findings of
> fact and conclusions of law to the district court for review *de novo*
> on that claim. The bankruptcy court rejected Pierce's argument
> finding that counterclaims are core based on § 157(b)(2)(C). On
> appeal the district court disagreed holding that while Vickie's
> counterclaim fell within the literal language of § 157(b)(2)(C), the
> Supreme Court's decision in *Marathon* precluded the court from
> holding that "any and all" counterclaims are core. Eventually, the
> Ninth Circuit agreed with the district court's legal conclusion,
> holding that "a counterclaim under § 157(b)(2)(C) is properly a
> 'core' proceeding 'arising in a case under' the Code only if the
> counterclaim is so closely related to a [creditor's] proof of claim
> that the resolution of the counterclaim is necessary to resolve the
> allowance or disallowance of the claim itself." The Supreme Court
> granted certiorari.

*Millennium,* 575 B.R. at 264-265 (footnotes omitted).

[19] *Katchen v. Landy*, 382 U.S. 323 (1966).

[20] *Langenkamp v. Culp*, 498 U.S. 42 (1990).

[21] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).

bankruptcy itself – it did not derive from bankruptcy law and it existed without regard to the bankruptcy proceeding – and it was not necessarily resolved in the claims allowance process, as there never existed a reason to believe that the process of ruling on Pierce's defamation claim would necessarily resolve Vickie's counterclaim. *See Millennium*, 575 B.R. at 266-67.

As Judge Silverstein explained, under the "Narrow Interpretation" of *Stern*, a bankruptcy court lacks constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim. *Id.* at 268. The Narrow Interpretation finds support in the Supreme Court's own characterization of the holding and its statement: "'[w]e do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute.'" *See id.* (quoting *Stern*, 131 S. Ct. at 2620). Under the "Broad Interpretation" of *Stern*, Judge Silverstein explained, "a bankruptcy judge cannot enter a final judgment on all state law claims, all common law causes of action or all causes of action under state law." *Id.* at 268-69. The Broad Interpretation finds support in the varying language used in *Stern* that did not consistently limit the discussion to a "Vickie-type" counterclaim. *Id.* Under either interpretation, it is clear that *Stern* was decided in the context of "a state law claim or counterclaim brought by the debtor-in-possession or trustee." *Id.* at 269. That is, as Judge Silverstein explained, "*Stern* is limited to claims based on state law that are commenced in the context of traditional civil litigation, or generically 'Debtor/Trustee v. Defendant.'" *Id.*

Judge Silverstein concluded that the Judges in this District who have expressed a view have consistently applied the "Narrow Interpretation." *Id.* at 269; *see also id.* at 269-70 (describing Judge Walrath's view as expressed in *In re Wash. Mut. Inc.*, 461 B.R. 200 (Bankr. D.

Del. 2011), *vacated in part*, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012), as "Broadest Interpretation").

Judge Silverstein noted that the parties had pointed the Court to only two post-*Stern* cases addressing the constitutionality of bankruptcy judges entering final orders confirming plans containing third-party releases: *Charles Street* and *MPM Silicones*.[22] Judge Silverstein found both of these cases supported her conclusion that, unlike the "action" in *Stern*, the "operative proceeding" before her was confirmation of the Plan. Plan confirmation is an enumerated core proceeding, meaning, she felt, the Bankruptcy Court clearly had statutory authority. As to constitutional authority, under either the Narrow Interpretation or the Broad Interpretation, *Stern*, in the view of Judge Silverstein, was inapplicable:

> Adopting the Narrow Interpretation, *Stern* is inapplicable as confirmation of a plan is not "a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." Adopting the Broad Interpretation, the same is true: *Stern* is inapplicable as confirmation of a plan is not a state law claim of any type. Under both of these interpretations, then, my constitutional analysis stops. My inquiry is limited to the statutory framework, and I can enter a final order confirming Millennium's Plan as a constitutional matter.

575 B.R. at 271.

Even under the Broadest Interpretation, the Remand Opinion concluded, the outcome is the same. In *Washington Mutual*, Judge Walrath did not import *Stern*'s Disjunctive Test into plan confirmation proceedings: rather, Judge Walrath "tailored her constitutional argument to the proceeding in front of her." *Id.* at 270. "To the extent a *Stern* analysis requires a specific look at

---

[22] *In re MPM Silicones, LLC*, 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014), *aff'd*, 531 B.R. 321 (S.D.N.Y. 2015), *aff'd in part, rev'd in part*, 874 F.3d 787 (2d Cir. 2017).

releases (and it is not clear that it does), those releases must comply with applicable provisions of the Bankruptcy Code":

> Courts that permit releases in appropriate circumstances often look to §§ 1129(a)(1), 1123(b)(6), and 105. Courts that do not permit releases often cite § 524(e). Regardless, courts are interpreting federal law. As the Seventh Circuit held, whether these releases are legally permissible is a matter the bankruptcy court has the power to determine. In the Third Circuit, nonconsensual third party releases are permissible in plans of reorganization if they meet the *Continental* standard of fairness and necessity to the reorganization.

*Id.* at 272 (internal footnotes omitted). Judge Silverstein further noted that consideration of the factors against which a third-party release is measured compel the bankruptcy judge to examine the terms of the plan or reorganization, the outcome of the solicitation of the plan, and the necessity of the release to the success of the plan. *Id.* "These factors do not ask the bankruptcy judge to examine or make rulings with respect to the many claims that may be released by virtue of the third party releases. An order confirming a plan with releases, therefore, does not rule on the merits of the state law claims being released." *Id.*

The Remand Opinion further noted that, even if the Bankruptcy Court were to import *Stern*'s Disjunctive Test into its analysis, those factors would be satisfied:

> [I]f I were going to import the *Stern* Disjunctive Test into Millennium's plan confirmation proceeding, it would be closer to the Debtors' analysis. First, however, I would conclude that confirmation of the Plan, as the operative proceeding, satisfies the first standard articulated in the Disjunctive Test. For all of the reasons set forth above, I would find that the Plan (and/or the releases) "stem(s) from the bankruptcy case" and thus I can, consistent with the Constitution, enter a final order confirming Millennium's Plan. Second, I would also conclude that the confirmation of the Plan satisfies the second standard articulated in the Disjunctive Test. As I already found, the releases were integral to confirmation and thus integral to the restructuring of the debtor-creditor relationship. Thus, the releases would be "necessarily resolved in the confirmation process" or "necessarily resolved in

the process of restructuring the debtor-creditor relationship."

> Finally, even under the Voya Interpretation, on the facts of this case I would determine that the RICO Lawsuit was "necessarily [ ] resolved in the claims allowance process." As previously discussed, the Plan settlements were comprehensive in nature. The settlements provided for the contribution of $325 million in exchange for the releases by the Debtors and third parties (including Voya), the settlement with the USA Settling Parties, as well as the allowance and treatment of claims under the Existing Credit Agreement. The settlement was global in nature: the claims under the Existing Credit Agreement were "Allowed," but only in the context of the Plan funded by the Non-Debtor Equity Holders, which required the third party releases. Voya held such a claim, and so its claim was "Allowed" by virtue of the Plan. As third party releases were essential to the allowance of those claims, the RICO Lawsuit was necessarily resolved in the claims allowance process.

*Id.* at 275 (footnotes omitted).

The Bankruptcy Court noted that a final order on a core issue that may have a preclusive effect on a third party lawsuit does not necessarily violate *Stern. See id.* at 275-76. The Bankruptcy Court further determined, after a thorough review of the record and supplemental briefing, that even if it lacked constitutional authority to enter a final order confirming the Plan, Voya had forfeited the right to contest the Bankruptcy Court's authority by not raising that argument. *See id.* at 288-95. Finally, the Bankruptcy Court determined that, even if Voya was entitled to a hearing on the merits of the RICO/fraud action in the context of confirmation, Voya waived that right as well. *See id.* at 296-98.

## III. JURISDICTION

The Court has jurisdiction over all final judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a)(1). An order confirming a plan of reorganization is a final order. The Remand Opinion clarifies the basis for the Bankruptcy Court's rulings in the Confirmation Order.

In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992).

## IV. CONTENTIONS

Voya argues that the Bankruptcy Court erred in concluding that it had constitutional authority to enter the Confirmation Order approving non-consensual third-party releases over Voya's objection. (*See* D.I. 31) Voya contends that the Bankruptcy Court was required to apply *Stern*'s Article III Disjunctive Test to its RICO/fraud claims and, had it done so, it would have concluded that Voya's RICO/fraud claims do not satisfy that test. (*Id.* at 14-18)

Conversely, Debtors argue that the Remand Opinion properly concluded that *Stern*'s narrow holding had no effect on the Bankruptcy Court's authority to approve such releases in the context of plan confirmation. (*See* D.I. 32 at 19-20) Unlike the bankruptcy court in *Stern*, which conducted a bench trial and ruled on the merits of a state law claim, the Bankruptcy Court here determined only that the bankruptcy-specific standards for approving nonconsensual releases in a plan were satisfied. (*See id.* at 2, 14-15) When claims are "integral" to core bankruptcy processes, Debtors argue, the Bankruptcy Court has constitutional authority to extinguish them. (*See id.* at 17) According to the Debtors, while that ruling may have impaired Voya's claims, the ruling does not adjudicate the merits of those claims. (*See id.*) Moreover, Debtors contend, Voya consented to the Bankruptcy Court's constitutional authority to enter a final order confirming the Plan, thus repeatedly waiving the constitutional arguments Voya raises here. (*See id.* at 18)

Notwithstanding any merits of the appeal, Debtors again move to dismiss the appeal as equitably moot. (D.I. 24 at 11-17) Debtors argue that the Plan has been substantially consummated since the Effective Date, effectuating a complete change of ownership and control of the successor Reorganized Debtors; substantially all transfers of property contemplated by the Plan have been completed; and other substantial distributions under the Plan have been made and are continuing. (*See id.* at 11-12) Debtors contend that Voya failed to exhaust its opportunities to seek a stay of the Confirmation Order, and cannot now ask the Court to unwind the global settlement and releases that serve as the foundation of the Plan while retaining the full benefit of the $325 million settlement contribution. (*Id.* at 12-16) In the view of Debtors, the relief sought in the appeal threatens both to fatally scramble the Plan and significantly harm third parties who have justifiably relied on the Plan Confirmation Order. (*See id.* at 17-19)

Conversely, Voya argues that the Court should strike the releases and injunction from the Plan as applied to Voya so that its RICO/fraud action may proceed here. (D.I. 35 at 4) Voya contends that the relief sought in the appeal is limited and consists solely of modifying the Plan to strike the non-consensual releases of Voya's (and only Voya's) claims against other non-debtors (and the accompanying Plan injunction), which would neither fatally scramble the Plan nor harm any third parties who have justifiably relied on these Plan provisions. (*See id.* at 17-19) Voya urges that these releases can be struck without any ripple effect or injury to third-parties, with the exception of the Equity Holders. (*See id.*) To Voya, regardless of the outcome of the appeal, the Plan, as well as the myriad transactions executed under its auspices, will remain in place, and, according to Voya, the Debtors' business will continue as it has since the Plan was confirmed. (*See id.* at 1-2)

## V.    DISCUSSION

### A.    Debtors' Procedural Argument

As an initial matter, Debtors argue that because equitable mootness turns on whether this Court can equitably provide Voya *any* relief, that analysis should precede any ruling on the merits of Voya's arguments, including any arguments Voya may make under *Stern.* (*See* D.I. 24 at 10)[23] According to Debtors, *Stern*'s holding that bankruptcy courts lack constitutional authority to adjudicate certain claims on a final basis is not a threshold issue for this Court. (*See id.*) Voya disagrees, arguing that because its appeal "implicates the Bankruptcy Court's constitutional power to act, under well-established Supreme Court precedent, this Court is obligated to first decide whether the Bankruptcy Court had such power before considering whether the appeal should be dismissed under the judge-made equitable mootness doctrine." (D.I. 35 at 9)

This Court has already declined to consider dismissal of the appeal based on the judge-made equitable mootness doctrine prior to considering the constitutionality of the Bankruptcy Court's ruling below. *See Millennium*, 242 F. Supp. 322 at 337-38.   Case law addressing jurisdiction, as opposed to constitutional authority, is consistent with this approach. As Voya persuasively argues:

> In the analogous context of Article III standing – a component of Article III's "case" or "controversy" requirement and prerequisite to the constitutional exercise of the "judicial power of the United States" – the Supreme Court has twice held that an appellate court, before it decides any other issue presented by the appeal, must first verify that the plaintiff had Article III standing sufficient to confer on the lower court power to hear the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-104 (1998); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986).  The Supreme Court grounded this requirement in the "inflexible" rule,

---

[23] Following oral argument, supplemental briefing was filed on this issue. (*See* D.I. 48, 49)

itself a product of separation of powers concerns and Article III's limitations on federal court power, that "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review[.]'" *Bender*, 475 U.S. at 541 (quotation omitted); *see also Steel Co.*, 523 U.S. at 94 (same) (quotation omitted). "The requirement that jurisdiction be established as a threshold matter 'spring[s]' from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Id.* at 94-95 (quotation omitted). In other words, this threshold jurisdictional inquiry is necessary because a federal court must initially determine in every case whether it, ***and any lower court whose decision it is reviewing***, "is authorized" to act pursuant to the Constitution and federal statutes. *See Bender*, 475 U.S. at 541; *see also Steel Co.*, 523 U.S. at 101 (same) (citation omitted). . . . That the constitutional defect may technically not be jurisdictional does not matter if it goes to the very power of the lower court to act consistent with Article III and separation of powers principles.

(D.I. 35 at 9-10)

Even if Voya's argument is incorrect, Debtors did not contest this approach prior to remand. (*See* Civ. No. 16-110-LPS D.I. 44, 10/7/16 Hr'g Tr. at 46:19-47:5) Thus, the Court perceives no reason to now change course on this procedural issue.

## B. Debtors' Waiver Argument

Debtors argue that Voya waived and/or forfeited the argument that the Bankruptcy Court lacked constitutional authority to approve the releases in the confirmation proceedings below. (*See* D.I. 32 at 52-59) On remand, the Bankruptcy Court directed the parties to brief, *inter alia*, whether the Bankruptcy Court's lack of authority to approve any release of Voya's RICO/fraud claims was raised by Voya in plan confirmation briefing. The Remand Opinion contains an alternative holding that Voya both forfeited and waived any constitutional adjudicatory authority objection to the Bankruptcy Court's ability to enter a final order confirming the plan. *See Millennium*, 575 B.R. at 288-95.

Voya argues that it consistently maintained throughout the Chapter 11 proceedings that the merits of its RICO/fraud claims, which have been at all times pending in this Court, were not before the Bankruptcy Court and could not be decided there. (*See* D.I. 31 at 9-10) Voya further contends that, under Third Circuit law, a *Stern* argument cannot be waived. (*See id.* at 9) (citing *In re Linear Electric Company, Inc.,* 852 F.3d 313, 320 n.32 (3d Cir. 2017)) Conversely, Debtors assert that Voya not only failed to raise its constitutional authority argument during the confirmation proceeding, but also affirmatively consented – on multiple occasions – to the Bankruptcy Court's authority to enter a final order on the proceeding, and went so far as to expressly disclaim the constitutional authority argument. (*See* D.I. 32 at 52-59)

Voya's *Stern* argument does appear in its confirmation briefing (*see* B.D.I. 122 at 17) and the Debtors responded to it (*see* B.D.I. 131 at 17-18). Subsequently, however, it appears that Voya indicated it was no longer pressing the argument. (*See e.g.,* A2580) (Voya stating it had "cited *Stern **solely*** for the proposition that the [Bankruptcy] Court's jurisdiction is subject to ***statutory*** boundaries, not to assert" constitutional authority argument regarding Releases) (emphasis added) On the other hand, Debtors never argued in the 2016 Appeal, prior to remand, that Voya had waived or forfeited the constitutional authority argument below. (*See* Civ. No. 16-110-LPS D.I. 7, 24, 33)

Because the Court is affirming the Bankruptcy Court's holding that it had constitutional authority to grant the releases contained in the Plan, the Court need not decide whether also to affirm on the Bankruptcy Court's alternate basis for its decision. Hence, other than stating that this Court is ***not*** affirming on the basis of forfeiture or waiver, the Court is ***not*** resolving whether Voya did forfeit and/or waive its constitutional argument.

## C. Constitutional Authority to Approve the Releases

Nonconsensual third party releases are not *per se* impermissible in this Circuit. In *Continental*, the Third Circuit reviewed case law on nonconsensual third party releases, including cases holding that such releases were *per se* impermissible, before stating: "[t]he hallmarks of permissible nonconsensual releases – fairness, necessity to the reorganization, and specific factual findings to support these conclusions – are all absent here." *Continental II*, 203 F.3d at 214. As Judge Silverstein noted in her Certification Opinion,[24] these *Continental II* hallmarks have been referenced in numerous appellate decisions since 2000. *See, e.g., In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000) (discussing *Continental II*, and noting "[w]e [the Third Circuit] did not treat § 524(e) as a per se rule barring any provision in a reorganization plan limiting the liability of third parties"); *In re United Artists Theater Co. v. Walton (In re United Artists Theater Co.)*, 315 F.3d 217, 227 (3d Cir. 2003) ("The 'hallmarks of permissible non-consensual releases' are 'fairness, necessity to the reorganization, and specific factual findings to support these conclusions.' Added to these requirements is that the releases 'were given in exchange for fair consideration.'") (internal citations omitted). In *Global Industrial*, the Third Circuit expressly adopted the *Continental* hallmarks in its holding. *See In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 206 (3d Cir. 2011).

In the prior Memorandum Opinion, this Court stated it was persuaded by Voya's argument that the Plan's releases, which permanently extinguished Voya's RICO/fraud claims,

---

[24] The Bankruptcy Court certified for direct appeal to the Third Circuit the issue of "whether a bankruptcy court has the authority to grant nonconsensual third party releases over objection." *See In re Millennium Lab Holdings II, LLC, et al.*, 543 B.R. 703 (Bankr. D. Del. 2016) ("Certification Opinion"). On February 22, 2016, the Third Circuit denied Appellants' petition for permission to appeal pursuant to 28 U.S.C. § 158(d)(2). The 2016 Appeal was docketed in this Court days later, on February 26, 2016.

was tantamount to adjudication of those claims on their merits. *See Millennium*, 242 F. Supp. 3d at 339. The Court further stated that the view that *Stern*'s constitutional limitations on a bankruptcy judge's power should apply as much to plan confirmation as to any other bankruptcy-related proceeding was a view having much superficial appeal. *See id.* On remand, Judge Silverstein carefully articulated why the Court should not have been so persuaded.

## 1. *Stern*'s Article III Disjunctive Test

Voya argues that the Bankruptcy Court erred in concluding that it had constitutional authority to release and enjoin Voya's claims as part of the Plan, notwithstanding that plan confirmation is a constitutionally core proceeding. (D.I. 31 at 19) To Voya, the fact that the Bankruptcy Court entered a final judgment disposing of Voya's claims in the context of an order confirming a reorganization does not insulate that judgment from analysis under *Stern*'s Article III test. According to Voya, *Stern* holds that Article III authorizes bankruptcy courts to adjudicate and enter final judgment on claims that (i) "stem[] from the bankruptcy itself" or (ii) "would necessarily be resolved in the claims allowance process" – a standard that the RICO/fraud claims do not meet. *Stern*, 131 S. Ct. at 2618; *see also* 11 U.S.C. § 502 (setting forth statutory process for "allowance of claims or interests"). According to Voya, regardless of whether the Bankruptcy Court had constitutional authority to enter final judgment on the issue of plan confirmation, it had no authority under Article III to enter a final judgment on Voya's claims through approval of the releases: "Voya's claims are the 'action' the Bankruptcy Court needed constitutional authority to adjudicate, which it did not have." (D.I. 31 at 24) Thus, according to Voya, the relevant inquiry is not whether plan confirmation is core, but whether the other proceedings – that is, the RICO/fraud claims – affected by plan confirmation are core.

Conversely, Debtors argue that the only relevant proceeding before the Bankruptcy Court was plan confirmation, not each and every proceeding that may be affected by plan confirmation. (*See* D.I. 32 at 28) Debtors argue *Stern* did not address any other types of proceedings listed in § 157(b)(2) and did not address whether a bankruptcy court's ability to "hear and determine" a constitutionally core proceeding is limited by the *effects* the court's order might have on related non-core proceedings. (*See id.* at 24) According to Debtors, all that *Stern* concluded was "that Congress, in one isolated respect, exceeded" Article III's limitations by giving bankruptcy courts "authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." (*Id.*) (citing *Stern*, 131 S. Ct. at 2620)

As the Bankruptcy Court points out, even if it were ever appropriate to import *Stern*'s Disjunctive Test into a context other than a state law cause of action filed by a debtor or trustee, Voya does not point to anything in *Stern*, or cases interpreting *Stern*, suggesting that the pertinent action is something other than the operative proceeding before the bankruptcy judge – which, here, is plan confirmation. The Court agrees with Judge Silverstein's conclusion that "*Stern* did not address, either expressly or by implication, any context other than counterclaims," nor did it "announce a broad holding addressing every facet of the bankruptcy process." *Millennium*, 575 B.R. at 274.

Judge Silverstein reasoned in the alternative that even if the Bankruptcy Court were required to import *Stern*'s Disjunctive Test into another context, here the "action" at issue – the plan confirmation proceeding – would satisfy the factors. *See id.* at 275. Even under Voya's interpretation, "on the facts of this case I would determine that the RICO Lawsuit was 'necessarily [] resolved in the claims allowance process'" and that "the Plan (and/or releases) 'stem[med] from the bankruptcy itself.'" *Id.* Voya argues these conclusions were erroneous.

(*See* D.I. 31 at 29-30) To Voya, "[t]he only connection between the Releases and the allowance of certain claims against the estate is that they are both contained in the same Plan – because that is what the Debtors and other parties wanted (over Voya's objection)." (*Id.* at 31) Voya also disputes the Bankruptcy Court's conclusion that "the releases were integral to confirmation and thus integral to the restructuring of the debtor-creditor relationship." (D.I. 31 at 32) Anyway, in Voya's view, while "satisfying that standard might be sufficient to provide 'related to' jurisdiction, it does not provide constitutional authority." (*Id.*) According to Voya, nothing in *Langenkamp, Katchen, Stern* or any other Supreme Court opinion suggests that actions are "integral to the restructuring of the debtor-creditor relationship" where the actions would not necessarily be resolved as part of the claims allowance process. (*Id.* at 33)

As further explained below, the Court concludes that the Bankruptcy Court was correct in holding that plan confirmation is the operative proceeding, and in holding that *Stern* did not require application of the Disjunctive Test in the context of plan confirmation. Therefore, it is not necessary for the Court to determine whether the Disjunctive Test would be satisfied in this case.

### 2.    Preclusive Effect on Third Party Action

In the Remand Opinion, Judge Silverstein discusses *In re AOV Indus.*, 792 F.2d 1140, 1145 (D.C. Cir. 1986), in which the D.C. Circuit approved confirmation of a plan that included nonconsensual third party releases. In *AOV*, the party challenging the plan relied on *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982) (plurality opinion), to argue that because the claims released by the plan were only "related" to the bankruptcy, the bankruptcy court lacked constitutional authority to confirm a plan that released those claims. The *AOV* court rejected this argument, holding that confirmation proceedings are "at the core of bankruptcy

law," and that while a confirmation order "may have an impact on claims outside the scope of the immediate proceedings, we do not read *Marathon* and its progeny to prohibit all bankruptcy court decisions that may have tangential effects." *AOV*, 792 F.2d at 1140.

Voya distinguishes *AOV* on the grounds that the release there would have only "tangential effects" on the released claims, while the Plan here "directly extinguishes a third-party claim through a final judgment." (D.I. 31 at 28 n.7) This contention is unavailing. As Debtors correctly note, *AOV* concerned releases of claims, which presumably ***released*** claims, and did not just tangentially affect them. The Bankruptcy Court cites numerous other cases which support its conclusion that determining whether a bankruptcy court has constitutional authority to issue a final order on a proceeding requires looking ***at the proceeding*** – here, the confirmation plan proceeding – not on its incidental effects – which, here, would be its impact on Voya's RICO/fraud claims.[25]

---

[25] *See Millennium*, 575 B.R. at 282 (citing *In re Linear Elec. Co.*, 852 F.3d 313, 319-20 (3d Cir. 2017) (considering claims alleging violations of automatic stay and concluding "the Bankruptcy Court could constitutionally determine whether the liens violated the automatic stay," even if doing so extinguished state law rights); *In re Lazy Days' RV Center Inc.*, 724 F.3d 418, 423 (3d Cir. 2013) (rejecting *Stern* challenge to bankruptcy court order that effectively resolved pending state law contract claim between two non-debtors)). *See also Fisher Island Invs., Inc. v. Solby+Westbrae Partners (In re Fisher Island Invs., Inc.)*, 778 F.3d 1172, 1192 n.13 (11th Cir. 2015) (holding bankruptcy court had constitutional authority to resolve state-law claim because "[t]he bankruptcy court necessarily had to determine" issue for bankruptcy process to continue, and even if state-law issue was "not generally a core issue, the facts of this case make it core"); *Hart v. Heritage Bank (In re Hart)*, 564 F. App'x 773, 776-77 (6th Cir. 2014) (holding *Stern* did not preclude entry of final order by bankruptcy judge even though that order would appear to indirectly preclude certain state law claims); *Charles Street*, 499 B.R. at 99 (holding that while Chapter 11 plan might implicate numerous claims, including claims affected by plan's third-party releases, "the merits of" such claims "are not in controversy" and "[c]onfirmation of a plan is not an adjudication of the various disputes it touches upon"); *MPM Silicones*, 2014 WL 4436335, at *2 (concluding that court "continue[d] to have the power . . . on a Constitutional basis under *Stern v. Marshall*" to confirm plan with third party releases because "[t]he issues all involve fundamental aspects of the adjustment of the debtor/creditor relationship").

The Court agrees with the conclusion reached by the Bankruptcy Court.

### 3.    Adjudication on the Merits

The Bankruptcy Court found no support for Voya's argument that the Confirmation

Order approving the Plan's release and injunction was an adjudication on the merits of Voya's

claims. *See Millennium,* 575 B.R. at 283-85.  Voya argues that entry of the Confirmation Order

containing releases constitutes a final adjudication of its RICO/fraud action, and under *Stern,*

those claims "are the 'action' the Bankruptcy Court needed constitutional authority to

adjudicate." *Id.*  For support, Voya cites *CoreStates*[26] and *Digital Impact*[27] – but, as the Remand

Opinion points out, neither of these cases examines a bankruptcy judge's constitutional power to

enter an order.[28]  Voya has conceded that no case explicitly states that a confirmation order

containing a release is a final judgment on the released claims.  (A5531)

---

[26] *CoreStates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187 (3d Cir. 1999).

[27] *In re Digital Impact, Inc.,* 223 B.R. 1 (Bankr. N.D. Okla. 1998).

[28] The Court viewed these cases as supporting Voya's position prior to remand, but neither case is controlling.  As the Bankruptcy Court points out, the creditor in *CoreStates,* 176 F.3d at 196-97, argued that its contract claim against another creditor should not be barred by a confirmation order because, under *Marathon,* the bankruptcy court lacked constitutional authority to finally adjudicate the claim.  Because the claim was at least "related to" the bankruptcy, and thus "could have been brought as a non-core 'related' proceeding during the confirmation proceeding," the Third Circuit held that the confirmation order could have preclusive effect on that claim.  *Id.* at 196-97.  Voya cited *Digital Impact* for its statement that the release before it was "equivalent to issuing a final judgment" in favor of the released party, which the Court found persuasive in the Memorandum Opinion.  *See Millennium,* 242 F. Supp. 3d at 339.  However, as the Bankruptcy Court observed, *Digital Impact* was a "pure jurisdictional case" in which the "judge found that she did not have even 'related to' jurisdiction over any potential/theoretical third party litigation against [the released party] because the outcome of that litigation would not have any effect on the administration of the estate." *Millennium,* 575 B.R. at 283.  Voya conceded on remand that *Digital Impact* did not hold that a plan's release of a claim is constitutionally equivalent to adjudication of that claim.  (*See* A5531)

Debtors argue that Voya's view of the confirmation proceeding ignores the "fundamental difference between approval of a settlement of claims" – or approval of a plan that releases claims – "and a ruling on the merits of the claims." (D.I. 32 at 36) (internal quotation marks omitted) Prior to remand, this Court was also persuaded by Appellant's argument that the Plan's release, which permanently extinguished the RICO/fraud claims, was tantamount to resolution of those claims on the merits against Voya. *See Millennium*, 242 F. Supp. 3d at 339. According to the Debtors, the Bankruptcy Court correctly concluded that when a bankruptcy or Article III court confirms a plan with releases, it applies bankruptcy-specific law and adjudicates only that core proceeding, not the underlying claim. *See Millennium,* 575 B.R. at 272 (citing 11 U.S.C. §§ 105(a), 1123(b)(6), 1129(a)(1)).

The Court agrees with Judge Silverstein's observation regarding the real nature of this dispute: "[t]aking the position that third party releases in a plan are equivalent to an impermissible adjudication of the litigation being released is, at best, a substantive argument against third party releases, not an argument that confirmation orders containing releases must be entered by a district court." *Millennium*, 575 B.R. at 283. As Debtors point out, Voya's real disagreement is with the Third Circuit's precedent in *Continental II* – which, like many circuits, concluded that third party releases may be approved when certain standards are met. Voya's constitutional arguments fail.

### D. Equitable Mootness of Remaining Issues on Appeal

Prior to remand, Debtors had argued that the appeal must be dismissed as equitably moot. The Court declined to consider this contention prior to determining whether a constitutional defect in the Bankruptcy Court's decision deprived that court of the power to issue that decision.

*See Millennium*, 242 F. Supp. 3d at 337-38. Satisfied that no constitutional defect exists, the Court will consider the Motion to Dismiss.

Equitable mootness is a judge-made abstention doctrine which finds applicability in the limited context of an appeal following the confirmation of a plan of reorganization by a bankruptcy court. *See In re SemCrude*, 728 F.3d 314, 317 (3d Cir. 2013). "Once effective, reorganizations typically implement complex transactions requiring significant financial investment." *Id.* Notwithstanding an aggrieved party's statutory right to appeal, and a federal court's "virtually unflagging obligation" to exercise the jurisdiction conferred on it, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), in some circumstances, granting the relief requested in the appeal "would disrupt the effected plan or harm third parties," *SemCrude*, 728 F.3d at 317. Parties seeking to dismiss an appeal as equitably moot contend that "even if the implemented plan is imperfect, granting the relief requested [in the appeal] would cause more harm than good." *Id.* In light of the responsibility of federal courts to exercise their jurisdictional mandate, the Third Circuit has cautioned that an appellate court must "proceed most carefully before dismissing an appeal as equitably moot." *Id.* at 318. "Before there is a basis to forgo jurisdiction, granting relief on appeal must be almost certain to produce a perverse outcome – chaos in the bankruptcy court from a plan in tatters and/or significant injury to third parties. Only then is equitable mootness a valid consideration." *Id.* at 320 (internal citations and quotation marks omitted).

In *In re Continental Airlines*, 91 F.3d 553, 560 (3d Cir. 1996) (*en banc*) (hereinafter, "*Continental I*"), the Third Circuit established five prudential factors to be considered in determining whether to dismiss an appeal of a bankruptcy order as equitably moot: "(1) whether the reorganization plan has been substantially consummated, (2) whether a stay has been

obtained, (3) whether the relief requested would affect the rights of parties not before the court, (4) whether the relief requested would affect the success of the plan, and (5) the public policy of affording finality to bankruptcy judgments." More recently, to reduce uncertainty in applying *Continental I*'s "interconnected and overlapping" factors, *In re Philadelphia Newspapers, LLC,* 690 F.3d 161, 168 (3d Cir. 2012), the Third Circuit collapsed these five factors into a two-step inquiry, *see In re Tribune Media Co.*, 799 F.3d 272, 278 (3d Cir. 2015). The Court must assess: "(1) whether a confirmed plan has been substantially consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation." *SemCrude,* 728 F.3d at 321.

Debtors, as the parties seeking dismissal of the appeal on equitable mootness grounds, bear the burden of proving that, weighing these factors, dismissal is warranted. *See id.* Because dismissal of an appeal over which the Court has jurisdiction "should be the rare exception and not the rule," any such dismissal must "also be based on an evidentiary record, and not speculation." *Id.*

### 1. Obtaining a Stay and Substantial Consummation

Substantial consummation is defined in the Bankruptcy Code to mean the:

(A)    transfer of all or substantially all of the property proposed by the plan to be transferred;

(B)    assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)    commencement of distribution under the plan.

11 U.S.C. § 1101(2). "Satisfaction of this statutory standard indicates that implementation of the plan has progressed to the point that turning back may be imprudent." *SemCrude*, 728 F.3d at 321.

"Whether a plan has been substantially consummated often depends . . . on whether a stay has been issued." *Id.* at 322. Here, Voya sought from the Bankruptcy Court a stay pending appeal of the Confirmation Order; however, relief was denied, and Voya did not exhaust its remedies by seeking a stay in an appellate court. The Third Circuit has held that, "[b]ecause of the nature of bankruptcy confirmations, . . . it is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." *Nordhoff Invs., Inc. v. Zenith Electronics Corp.*, 258 F.3d 180, 186-87 (3d Cir. 2001) (internal quotations marks and citations omitted). Debtors argue that Voya's failure to fully exhaust its opportunities for a stay pending appeal by applying for stay relief in this Court, while retaining all of the benefits of the Plan, was a strategic choice, and weighs in favor of equitable mootness and dismissal. (*See* D.I. 24 at 20) (citing *Mac Panel Co. v. Virginia Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002) ("Although [appellant] initially applied to the bankruptcy court for a stay, its request was denied, and it chose neither to appeal to the district court nor to seek an independent stay in the district court or in this court. By making that strategic choice, [appellant] allowed the reorganization plan to go into effect, taking the risks that attended such a decision.") Voya responds that its decision not to appeal the Bankruptcy Court's denial of the stay motion is irrelevant, as "the relief it seeks does not threaten the plan of reorganization's existence." (D.I. 25 at 20 n.13) (citing cases) Voya adds that the Equity Holders waived the non-appealability requirement, allowing Debtors to consummate the Plan, despite knowing of the risk that this

Court or the Court of Appeals could strike the releases after the Equity Holders had made their $325 million contribution. (*See* D.I. 35 at 6, 13) In such circumstances, Voya insists, equity favors Voya and not dismissal of its appeal. (*See id.* at 6-7 n. 7 & 13)

While a plan's substantial consummation often depends on whether a stay has been issued, "neither the Bankruptcy Code nor any other statute predicates the ability to appeal a bankruptcy court's ruling on obtaining a stay." *SemCrude*, 728 F.3d at 322. "Though Appellants would have been wise to seek a stay to stop the prospect of equitable mootness in its tracks, their statutory right to appeal, as noted, is not premised on their doing so." *Id.* at 323. Here, then, Voya's failure to obtain a stay does not weigh in favor of either party.

Nevertheless, it is agreed by both sides that the Plan is substantially consummated. (*See* D.I. 52, 7/12/18 Hr'g Tr. at 12:6-11; 24:7-9) The record supports this finding.[29] Thus, Debtors have met their burden to show satisfaction of the elements of § 1101(2) of the Bankruptcy Code and have further carried their burden of establishing that the Plan has been substantially consummated.

### 2. Success of the Plan and Harm to Third Parties

"If [the substantial consummation] threshold is satisfied, a court should continue to the next step in the analysis. It should look to whether granting relief will require undoing the plan as opposed to modifying it in a manner that does not cause its collapse." *SemCrude*, 728 F.3d at

---

[29] Debtors have submitted evidence that since the Effective Date: the Equity Holders have honored their obligation to pay $325 million; equity ownership and control of the Debtors has been completely restructured and changed; the Reorganized Debtors assumed management of the Debtors' property and business operations; a series of significant and complex financing and operational transactions have been effectuated pursuant to the Plan; hundreds of millions of dollars of settlement payments have been made in connection with government settlements pursuant to the Plan; settlement agreements have been executed and effectuated; and governmental investigations and litigations have ceased or been dismissed with prejudice. (*See* Civ. No. 16-110-LPS, D.I. 8 (Hardaway Decl.) at ¶¶ 8-9; Keane Decl. ¶¶ 5-12)

321. "It should also consider the extent that a successful appeal, by altering the plan or otherwise, will harm third parties who have acted reasonably in reliance on the finality of plan confirmation." *Id.* (citing *Continental II*, 203 F.3d at 210; *Continental I*, 91 F.3d at 562). For the reasons stated below, the Court concludes that (i) Voya seeks to strike the Plan's releases, which would severely undermine the Plan and necessarily harm third parties; (ii) the Court cannot equitably strike the releases solely as to Voya's RICO/fraud claims while allowing Voya to keep its share of the Equity Holders' contribution; and (iii) because it is unclear what other practicable relief would permit Voya to pursue its claims against the Equity Holders, the appeal meets the criteria for equitable mootness.

### a.    Modification of the Plan to Strike the Releases

The parties agree that the relevant question is not whether the Court has the legal power to excise the Plan's releases but whether it may equitably do so. (*See* 7/12/18 Hr'g Tr. at 7:4; 13:1-12; 15:3-15:8; 19:13-20:11; 33:24-34:6) Debtors argue that the Bankruptcy Court's findings, based on uncontroverted evidence, were clear that confirmation of the Plan, and the reorganization and preservation of the Debtors' business as a going concern, was not possible without the global settlement and $325 million settlement contribution paid by the Equity Holders in exchange for the releases granted to them under the Plan. To Debtors, then, it would be inequitable to allow Voya to keep its share of the Equity Holders' contribution yet allow claims against the Equity Holders to go forward; thus, the Court cannot equitably strike the Equity Holders' releases without ordering the return of their $325 million contribution, which forms the economic basis for the reorganization. Debtors further assert that granting such relief would cause difficult (perhaps impossible), time-consuming, and unmanageable problems

regarding the retroactive revocation of the settlements, including with governmental regulators, that allowed the Debtors to survive as a going concern.

Debtors liken the situation here to that confronted by the Third Circuit in *Tribune*, which dismissed an appeal as equitably moot.[30] In *Tribune*, 799 F.3d at 276, the appellants sought "modification of the confirmation order to reinstate the LBO-Related Causes of Action that the [plan] Settlement resolved so that the claims [could] be fully litigated or re-settled." The *Tribune* Court dismissed, as equitably moot, the appeal seeking to sever the plan settlement releases because "allowing the relief the appeal seeks would effectively undermine the Settlement (along with the transactions entered in reliance on it) and, as a result, recall the entire Plan for a redo." *Id.* at 281. Debtors argue the relief sought by Voya here would likewise undermine the global settlement, which the Bankruptcy Court found to be the "centerpiece of the plan" because without the global settlement, there would have been no operating business (or going concern value) to administer in a reorganization. (D.I. 24 at 10)

Voya asserts that if the releases were really the Plan's centerpiece, there would be a "provision allowing for a complete unwind" of the Plan in the event the releases were stricken on appeal. (*See* D.I. 35 at 14). But the Plan contains no such provision.

Voya has not identified any case holding that a provision should be viewed as integral to a plan only where the parties specify that, if the provision does not survive appellate scrutiny, the plan must be dissolved. Here, as the Debtors point out, such a provision likely would have been

---

[30] The *Tribune* decision also addresses a second, separate appeal of the confirmation order by a trustee that was found not to be equitably moot, where the relief requested by the trustee involved only a minor intercreditor dispute (e.g., solely regarding the allocation of distributions between two classes of creditors), the relief sought was not central to the plan, and there was "no chance that [an allocational] modification would unravel the Plan." *Tribune*, 799 F.3d at 282-83.

impossible, as the DOJ had leveled a "credible threat to destroy the Company" if the government was not paid $256 million by December 31, 2015, and it seems inconceivable that the parties to the Plan could ever force DOJ later to return settlement payments. (*See* D.I. 38 at 5-6)

Debtors argue that a successful appeal, which would result in striking the releases and unwinding the Plan, will harm third parties that have justifiably relied on the Plan, including (i) parties to the global settlement who consummated that settlement; (ii) the Debtors' unsecured creditors, who were granted recoveries otherwise unavailable absent the global settlement and Plan; (iii) the Debtors' vendors, customers, and approximately 1,200 employees, who benefit from the Reorganized Debtors operating as a going concern; and (iv) market participants and investors trading in and relying upon the securities and debt issued pursuant to the Plan. (D.I. 24 at 18) Voya counters that no legitimate third party reliance interests will be harmed if the releases are stricken, and the only parties who stand to lose anything from a successful appeal are the non-debtor tortfeasors who defrauded Voya. (D.I. 35 at 17)

The Court agrees with Debtors that the releases cannot equitably be excised as they were the very centerpiece of the Plan. The Bankruptcy Court made a specific finding that the releases were the inducement for the Equity Holders' $325 million contribution, and without this contribution, there could not have been the reorganization from which Voya benefitted. "Without the releases, there will be no cash contribution to pay the government settlements, and the lenders, including [Voya], would not receive the equity of the company, valued at in excess of $900 million." (12/11/15 Hr'g Tr. at 22) The releases shared an "integral nexus" with feasibility of the Plan: *but for* the Equity Holders' $325 million contribution, there would have been no plan of reorganization, and *but for* the third-party releases, the Equity Holders would not have made the $325 contribution. *Continental I*, 91 F.3d at 564. Excising the releases in this

particular Plan would "knock the props out from under the authorization of every transaction that has taken place" pursuant to the Plan. *Tribune*, 799 F.3d at 281.

If unwound, third parties who reasonably relied on Plan confirmation would be injured. Voya has conceded that third parties have engaged in "myriad transactions" pursuant to the Plan. (*See* D.I. 35 at 1; *see also* D.I. 25 (Keane Decl.) at ¶¶ 5-12) The revocation of the global settlement would certainly "require a sufficient redistribution of assets to destabilize the financial basis of the settlement." *SemCrude*, 728 F.3d at 324. The Court agrees with Debtors that third parties, most of whom are not participating in this appeal, have relied upon the global settlement and Plan confirmation and will be harmed if the Confirmation Order is reversed or vacated.

### b. Modifying the Plan to Strike the Releases Solely as to Voya's RICO/Fraud Claims

Voya argues that *Tribune* is distinguishable because appellants in that case sought to revoke a settlement under the applicable plan "in its entirety," whereas Voya seeks only to strike a component of the Plan. (*See* D.I. 35 at 16) According to Voya, "the relief sought consists solely of excising from the Plan the unlawful non-consensual releases of and injunction against Voya's (and only Voya's) RICO and state law fraud claims against other non-debtor third parties," relief which can be granted without undermining the global settlement or returning the Equity Holders' contribution. (*See id.* at 1) Voya argues that the Third Circuit has held, on several occasions, that appeals are not equitably moot where, as here, "a party merely seeks revival of discrete released claims that would not otherwise upset a confirmed plan." (*Id.* at 14)

Voya points out that the Equity Holders received a release of $1.8 billion dollars in claims in exchange for their $325 million contribution, and the RICO/fraud action asserts only $316 million in claims. Thus, were the Court to strike the release of Voya's RICO/fraud claims, the Equity Holders would still have received substantial value for their contribution under the

Plan. Voya further argues that nothing in the Plan gives the Equity Holders the right to demand the return of their $325 million monetary contribution following Plan consummation if the non-consensual releases and injunction are struck on appeal. (*See id.* at 5, 12-13) Indeed, Voya argues, the Plan even contemplates what should occur if the releases are stricken, as it provides $3 million of insurance to help the Equity Holders cover the costs of defending litigation brought by parties like Voya. (*See id.* at 13-14 citing A1722)

The Court is not persuaded that it could, as a practical matter, limit its relief solely to striking the releases relating to Voya's RICO/fraud claims. The Bankruptcy Court found those releases were central to the Plan and, far from being clearly erroneous, is strongly supported by uncontroverted evidence in the record. For instance, the Bankruptcy Court found the releases to be the "centerpiece of the plan," stating that the "unrefuted evidence is that the third-party releases . . . [were] required to obtain the funding for this plan," the releases were necessary to consummate the Plan, and that without the Equity Holders' $325 million payment, "there is no reorganization." (12/11/15 Hr'g Tr. at 11-12, 21-25) These findings were based on the testimony of five witnesses, none of whom did Voya choose to cross-examine.

It follows from the centrality of the releases to the Plan that taking the releases out of the Plan would necessarily lead to the unraveling of the Plan. Among other things, the Court would have to permit the Equity Holders to seek to reclaim their contributions made pursuant to the Plan. Voya seeks to keep its share of the settlement consideration received under the consummated Plan while also pursuing the very claims against the Equity Holders that they paid to settle. Particularly given the central importance of the releases to the Plan – and to Debtors' ongoing viability and, thus, to creditors' (including Voya's) recoveries – this would not be an equitable outcome.

Notwithstanding the Bankruptcy Court's unrefuted findings, Voya argues striking the releases is justified because the releases were unlawful, and the Equity Holders, despite paying $325 million for the releases, were never entitled to them in the first place. The Court is not persuaded by Voya's equitable arguments. (*See* D.I. 35 at 18) (citing *Tribune*, 799 F.3d at 278) Voya objected to the Plan's releases, and the Bankruptcy Court overruled the objection, in accordance with the Bankruptcy Court's application of controlling Third Circuit precedent and based upon specific findings of fact supporting the fairness of the releases and their necessity to the Debtors' reorganization.

The Court's decision is not inconsistent with cases in this circuit holding that plan releases in other contexts may be disturbed on appeal without implicating equitable mootness concerns. Unlike those cases, the uncontroverted evidentiary record here clearly establishes the central, critical nature of the challenged relief and the urgencies that required the parties to finalize negotiations and proceed to confirmation before a looming life-or-death deadline for the Debtors.

### c. Other Practicable Relief

The Court is persuaded that, upon consideration of the Third Circuit's two-part inquiry, and the uncontroverted evidence, the Debtors have carried their burden of demonstrating that each factor is supported by the evidentiary record and that dismissal of this appeal is required to avoid the collapse of the Plan and harm to third parties. However, the Court is also mindful of the Third Circuit's guidance in *Tribune*: "[W]hen a court applies the doctrine of equitable mootness, it does so with a scalpel rather than an axe. To that end, a court may fashion whatever relief is practicable instead of declining review simply because full relief is not available." *Tribune*, 799 F.3d at 278 (internal quotation marks and citation omitted). The Court has

carefully considered the specific relief sought on appeal and whether some form of partial or other relief may be fashioned with respect thereto. Voya ultimately seeks to pursue its RICO/fraud claims against the Equity Holders. This could only occur if the Court eliminates the Plan's releases (and injunction). Voya has not articulated how any other form of partial or other relief is available for the Court to consider.[31]

## E.    Remaining Issues on Appeal

As explained above, the Court is affirming the Remand Opinion with respect to the Bankruptcy Court's constitutional authority and is dismissing all other issues on appeal as equitably moot. In the alternative, were the Court to have reached contrary conclusions on constitutional authority and/or equitable mootness, the Court would also affirm the Confirmation Order by rejecting on the merits the other issues raised on appeal by Voya.[32] Although Voya did not proceed in the manner it should have to be certain to preserve all of the issues it had initially raised in the 2016 Appeal,[33] the Court will treat Voya's appellate issues as neither waived, nor forfeited, and will address them now.

---

[31] Because the Court finds that the appeal must be dismissed as equitably moot, the Court does not reach Debtors' additional argument that the Appeal is constitutionally moot. (*See* D.I. 24 at 17 n.20)

[32] The Court provides this alternative analysis because of the high burden that exists for equitable mootness, the parties have devoted a great deal attention to these additional issues, and the appeal has been pending for quite a while.

[33] Debtors are generally correct that "a party cannot preserve an appellate argument by merely 'trying to incorporate arguments' it made 'somewhere else.'" (D.I. 32 at 3) (citing *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 816 (3d Cir. 2016)) Among other things, Voya's practice is inconsistent with the page limits imposed on briefs. A strong argument can be made that issues Voya briefed only in the 2016 Appeal – and to which it did not devote any portion of its briefing in the current appeal – have been waived. Nonetheless, because the Court does have full briefing on these issues (from the pre-remand briefing), the Memorandum Opinion did not indicate the status of those issues, and there appears to have been confusion among the parties as to how the appeal would proceed post-remand, the Court will treat the issues as not having been waived.

## 1. Subject Matter Jurisdiction

Voya argued that the Bankruptcy Court erred in determining that it had subject matter jurisdiction over Voya's RICO/fraud claims. Under the Third Circuit's decision in *Pacor*, the Bankruptcy Court has "related to" jurisdiction over third-party claims if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). The Bankruptcy Court based its decision on the fact that defendants in the RICO/fraud action are indemnified under the Debtors' operational agreements.

Voya argues that the indemnification obligations do not automatically state a right to indemnification because its RICO/fraud claims are outside the scope of the indemnification obligations, as they arise in fraud and intentional conduct. Indemnification of such intentional conduct, according to Voya, would be prohibited by applicable law. Debtors respond that Voya is ignoring the Debtors' contractual obligations to advance defense costs to the indemnified released parties before any final determination on the merits and without regard to the substance of the underlying putative claims against them. *See, e.g., In re Lower Bucks Hosp.*, 488 B.R. 303, 315-16 (E.D. Pa. 2013) (finding "related to" subject matter jurisdiction where debtor was required to assume defense costs prior to any finding of liability).

The Court agrees with Debtors. As the Bankruptcy Court stated, "to find that the indemnification obligations do not have any conceivable effect on the debtors, I need to assume that Voya will be successful in its lawsuit or any lawsuit it might bring. And I also need to assume that it wouldn't subsequently amend its claims to include non-fraud-related causes of action. The[] cases cited by Voya . . . do not address these issues." (12/11/15 Hr'g Tr. at 14:20-15:1)

## 2. Statutory Authority to Approve the Releases under *Continental II* and the *Master Mortgage* Factors

Voya's remaining arguments concern the Bankruptcy Court's statutory authority to approve the Plan releases under the Bankruptcy Code. Courts that permit releases in appropriate circumstances often look to §§ 1129(a)(1),[34] 1123(b)(6),[35] and 105.[36] *See Global Indus.*, 645 F.3d at 206 (citing *Continental II* and noting that, under Third Circuit precedent, to show appropriateness of injunction of claims under § 105(a) requires showing with specificity that injunction is necessary to reorganization and is fair). In its analysis, the Bankruptcy Court made specific findings as to the *Master Mortgage* factors but ultimately returned to the *Continental II* hallmarks of "fairness, necessity to the reorganization." (12/11/15 Hr'g Tr. 16:12-26:14) On appeal, Voya argues that the Bankruptcy Court's findings do not satisfy the *Master Mortgage* factors, which are:

> (1) an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (2) substantial contribution by the non-debtor of assets to the reorganization; (3) the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success; (4) an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes "overwhelmingly" votes to accept the plan; and (5) provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

---

[34] 11 U.S.C. § 1129(a)(1) (providing court shall confirm plan only if "plan complies with the applicable provisions of this title").

[35] 11 U.S.C. § 1123(b)(6) (plans may "include any other appropriate provision not inconsistent with the applicable provisions of this title").

[36] 11 U.S.C. § 105(a) ("The court may issue any order process, or judgment that is necessary to carry out the provisions of this title.").

168 B.R. at 935. However, the *Master Mortgage* factors, while helpful guideposts, are not controlling; also, they are not "an exclusive list of considerations, nor are they a list of conjunctive requirements." *Id.*; *see also In re 710 Long Ridge Road Operating Co., II, LLC,* 2014 WL 886433, at *14 (Bankr. D.N.J. Mar. 5, 2014) (holding *Master Mortgage* guideposts are "not considered requirements for the approval of third-party releases, but . . . may be instructive to the court"); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (deciding whether to grant third party release "is not a matter of factors and prongs"). As noted above, the Third Circuit's decision in *Continental II*, 203 F.3d at 214, sets forth the controlling standard for approval of non-consensual releases.

Nonetheless, Voya argues "the facts of this case" do not satisfy three of the five guideposts set forth *Master Mortgage*: (i) identity of interest; (ii) substantial contribution by the released party; and (iii) payment of "all, or substantially all" of the affected classes' claims. (*See* Civ. No. 16-110 D.I. 13 at 40-51) Debtors contend that even if the *Master Mortgage* guideposts were requirements in the Third Circuit (they are not), and even if all of the guideposts needed to be satisfied (they do not), the Bankruptcy Court's extensive findings upon the substantial and uncontroverted record below nevertheless satisfy each of the *Master Mortgage* guideposts, including the three argued by Voya on appeal. (Civ. No. 16-110-LPS, D.I. 24 at 45-54). The Court agrees with Debtors.

### a. Identity of Interest

Voya argues that the Bankruptcy Court erred in finding an "identity of interest" between the defendants in the RICO/fraud action and the Debtors under the *Master Mortgage* factors. (*See* Civ. No. 16-110 D.I. 13 at 46-47) In the Court's view, the Bankruptcy Court correctly found that each of the Equity Holders, like the other released parties under the Plan, were

covered by the Debtors' indemnification, advancement, and defense obligations. (*See* 12/11/15 Hr'g Tr. at 18) Thus, claims brought against the released parties may be viewed as suits against the Debtors, or at minimum as suits that threaten to deplete the Debtors' assets, which is sufficient here to establish identity of interest. *See In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070, 1079-80 (11th Cir. 2015) (finding identity of interest between debtor and released parties, who were debtor's key employees, where debtor would deplete its assets defending released parties against litigation); *see also In re MAC Panel Co.*, 2000 WL 33673757, at *11 (Bankr. M.D.N.C. Feb. 24, 2000) (finding identity of interest exists where releasees have potential indemnification claims against debtor).

Voya counters that the causes of action it asserts for fraud and willful misconduct are not indemnifiable. However, the Bankruptcy Court found that the Debtors are obligated to advance defense costs without regard to the type or substance of Voya's claims. *See* 12/11/15 Hr'g Tr. at 14-15; *see also Nat'l Heritage Found. Inc. v. Behrmann*, 2013 WL 1390822, at *5 n.9 (E.D. Va. Apr. 3, 2013) (recognizing identity of interest may arise out of advancement obligations). Moreover, Voya's position incorrectly presumes it will prevail on each of its speculative claims. (*See* 12/11/15 Hr'g Tr. at 14-15)

### b.     Substantial Contribution

Voya argues the Bankruptcy Court erred in finding that the Equity Holders are making a "substantial contribution" to the reorganization under the *Master Mortgage* factors. (*See* Civ. No. 16-110-LPS D.I. 13 at 47-51) The Bankruptcy Court considered the uncontroverted record and found that the Released Parties, including the defendants to the RICO/fraud complaint, contributed substantial assets to the reorganization. (*See* 12/11/15 Hr'g Tr. at 19) (detailing contributions of defendants, including TA, MLH, Slattery, Appel, and related parties) On

appeal, Voya questions the "quantum" of contributions by Slattery and Appel; characterizes the

Equity Holders' contributions as payments but "not truly a contribution" or payment of "actual

assets;" and insists the Equity Holders' agreement to forego valuable legal rights (e.g., to object

to the plan or settlement) was merely a "forfeiture of their equity holding." (Civ. No. 16-110-

LPS D.I. 13 at 47-50) However, as Debtors correctly argue, Voya waived its argument regarding

the "quantum" of contributions by Slattery and Appel by failing to raise it below and failing to

provide any evidentiary basis in support. The Bankruptcy Court's finding of substantial

contribution by the Equity Holders was based on the uncontroverted record and testimony of five

witnesses. Voya did not cross-examine those witnesses or submit competing evidence on this

point. (12/11/15 Hr'g Tr. at 21) (noting record on substantial contributions was "unrebutted" and

"unrefuted") Even had Voya properly raised this argument in the Bankruptcy Court, the record

provides no basis to disturb the Bankruptcy Court's ruling.

### c. Payment for All or Substantially All of the Claims in the Affected Class

Voya challenges the Bankruptcy Court's findings regarding whether there is payment of

"all, or substantially all," class 2 claims. (*See* Civ. No. 16-110-LPS D.I. 13 at 40) Voya asserts

error in the Bankruptcy Court's holding that the pertinent inquiry is "whether [Voya] received

reasonable [or fair] compensation in exchange for the release." (A2401) Debtors contend that

the Plan provides for "all or substantially all" affected claims to be paid as it "provides for

payments to all classes of claims in excess of the liquidation value of those claims." (*See* Civ.

No. 16-110-LPS D.I. 24 at 51-52) (citing cases and explaining "factor five is met because the

nonconsenting parties [received] more than they would in a liquidation"); *see also In re*

*Condustrial, Inc.*, 2011 WL 3290389, at *5-6 (Bankr. D.S.C. Aug. 1, 2011) (explaining impacted

class would receive payment of "all or substantially all" as "the [p]lan provide[d] for the

releasing parties to receive payment in an amount in excess of any funds they would receive from an orderly liquidation of the [d]ebtor").

Here, the Bankruptcy Court found, among other things, that payments and distributions to be made to class 2 creditors under the Plan dwarfed any recoveries for class 2 claims in a wipeout liquidation. (*See* 12/11/15 Hr'g Tr. at 25-26) Specifically, the Court found:

> [T]he contributions [of the released parties] . . . facilitate[d] distributions to creditors, including those in Class 2, . . . [and] those distributions are enormously greater in a reorganization, versus a liquidation.
>
> [T]he contributions made by [the Equity Defendants] are absolutely essential to the reorganization of this debtor. *Without the contributions, there is no reorganization.* While Voya would have me speculate as to other options, I do not see one. CMS will revoke the debtors' license, and there will be no ongoing business if payment is not made to the [government] by December 30th.
>
> [T]here is an *enormous disparity between the reorganization value and the liquidation value of this company.* . . . Without this settlement, this case turns into litigation. Inherent in that litigation is the uncertainty of success, expenses and delay in obtaining recoveries. *Over 90 percent of the creditors prefer recoveries from an ongoing business.* [And] [a]ll parties were at the table in the negotiation in this settlement contained in a plan.

These findings were not clearly erroneous. The *Master Mortgage* factor is satisfied.

In sum, then, Voya's arguments provide no basis to disturb the Bankruptcy Court's conclusion that the Plan releases were necessary to the reorganization and fair.

## VI. CONCLUSION

For the reasons explained above, the Court affirms the Remand Opinion with respect to the Bankruptcy Court's constitutional authority to approve the Plan's releases, and grants the Motion to Dismiss all remaining issues on appeal as equitably moot. Alternatively, the Court affirms the Confirmation Order with respect to all remaining issues raised on appeal. A separate Order will be entered.